## DREW, Adm'r, v. THURLWELL.

No. 24513. Sept. 10, 1935.

D. H. Linebaugh and Paul Pinson, for plaintiffs in error.

C. R. Thurlwell, in pro se.

PER CURIAM. On April 26, 1923, in an action pending in the district court of Tulsa county, in which James Rabbit and C. H. Drew, as administrator of the estate of Amos Rabbit, deceased, were plaintiffs and C. R. Thurlwell, D. C. Acosta, James Mackin and J. H. Goodwin were defendants, said plaintiffs recovered a judgment against said defendants. The judgment was in two parts. There was a judgment in favor of both plaintiffs and against the defendants Thurlwell, Mackin, and Goodwin for $19,348.74, with interest, and there was a judgment in favor of both plaintiffs and against the defendants Thurlwell, Mackin, Goodwin, and Acosta for $5,831, with interest. The judgment was later affirmed by this court. Thurlwell v. Rabbit, 110 Okla. 285, 235 P. 923. James Rabbit, one of the plaintiffs, died in November, 1926. Thereafter H. A. Archerd was appointed administrator of the estate of James Rabbit, deceased. On February 21, 1928, said administrator filed a motion in said cause in the district court of Tulsa county suggesting the death of James Rabbit and requesting that said cause be revived in his name as such administrator. The motion to revive was resisted by defendant Thurlwell, and after a hearing, the court, on June 9, 1928, denied the motion to revive. There was never any appeal from the order denying the revivor.

On October 20, 1931, two praecipes for execution were filed is said cause, each be-

ing signed by Paul Pinson and D. H. Linebaugh as attorneys for plaintiffs; one praecipe requested an execution against all defendants for $19,348.74, with interest and costs, and the other requested an execution against defendants Thurlwell, Mackin, and Goodwin for $5,831, with interest and costs. On the same date two executions were issued, each being against all defendants, but one was for $19,348.74, with interest and costs, and the other for $5,831, with interest and costs. Each execution recites that the judgment mentioned and described was obtained by James Rabbit and C. H. Drew, administrator of the estate of Amos Rabbit, deceased, and Paul Pinson and D. H. Linebaugh, equitable assignees.

The praecipes for executions were not in conformity to the judgment as to the judgment debtors, and one of the executions was not in conformity to the praecipe in the same respect, but no attack was apparently made on the executions upon those grounds. The defendant Thurlwell did file a motion to recall and quash the executions upon various grounds, the principal ones being: (1) That James Rabbit, one of the judgment creditors, died in November, 1926, and that the judgment had never been revived, and that the court had in fact refused to revive the judgment; (2) that on November 3, 1925, James Mackin, one of the judgment debtors, died, and that the judgment had not been revived against his representatives; and (3) that on July 26, 1926, D. C. Acosta, one of the judgment debtors, died, and the judgment had not been revived against his representatives.

D. H. Linebaugh, Paul Pinson, and C. H. Drew, administrator of the estate of Amos Rabbit, deceased, filed a motion for leave to amend the praecipe for executions and the executions. They alleged that James Rabbit and the estate of Amos Rabbit, deceased, were each originally entitled to a one-half interest in said judgment; that Linebaugh and Pinson held an attorneys' contract from each for the prosecution of said action, which gave them a one-half interest in the recovery by each of said plaintiffs; that, therefore, said judgment was in reality owned in the following proportions: James Rabbit, one-fourth, the estate of Amos Rabbit one-fourth, and Linebaugh and Pinson one-half. They conceded that the one-fourth interest remaining in James Rabbit, then deceased, had become dormant by reason of the fact that the court had refused to permit the judgment in his name to be revived. They further alleged that the executions should have been issued for only three-fourths of the judgment instead of the full amount; that at the time of the issuance of the executions they were not aware that defendants Mackin and Acosta were dead, and it was not their desire or intention to issue executions against deceased judgment debtors. They prayed an order directing the amendment of the praecipe for executions and the executions, so that the same would read for three-fourths of the judgment instead of the full amount, and so that the same would not run against the defendants Mackin and Acosta, but only against defendants Thurlwell and Goodwin.

After various hearings upon said motions, the trial court found that said judgment became dormant by reason of the death of James Rabbit, one of the judgment creditors, in November, 1926; that no motion for revivor was filed within one year as provided by law; that a motion for revivor was filed on February 21, 1928, which motion was by the court denied on June 9, 1928, for the reason the motion to revive was not filed within the time required by law, and which judgment and order of the court denying the motion to revive was final and from which no appeal was ever taken; that by reason of the death of James Rabbit and the failure to revive said judgment within one year as provided by law, said judgment became dead and of no effect, and, therefore, no valid execution should or could be executed upon said judgment; and that said executions issued thereon were void. The court did not directly pass upon the motion to amend the praecipe for executions and the executions, but did sustain the motion to recall and quash said executions. From the order recalling and quashing said executions, C. H. Drew, administrator of the estate of Amos Rabbit, deceased, D. H. Linebaugh and Paul Pinson have appealed.

The controlling question in this case is whether or not when a joint judgment has been rendered in favor of two or more plaintiffs, or judgment creditors, and one of said judgment creditors dies, it renders the judgment dormant as to all judgment creditors until revived, and if not revived within the time required by law, whether or not the judgment becomes dead and nonenforceable by or on behalf of any surviving judgment creditor.

Section 575, O. S. 1931, provides:

"When one of the parties to an action dies, or his powers as a personal representative cease before the judgment, if the right of action survive in favor of or against his representatives or successors, the action may be revived and proceed in their names."

Section 576, O. S. 1931, prescribes the manner of revival as follows:

"The revivor shall be by an order of the court, if made in term, or by a judge thereof, if in vacation, that the action be revived in the names of the representatives or successor of the party who died, or whose powers ceased, and proceed in favor of or against them."

Section 584, O. S. 1931, limits the time of revivor in the following language:

"An order to revive an action in the names of the representatives or successors of a plaintiff, may be made forthwith, but shall not be made without the consent of the defendant, after the expiration of one year from the time the order might have been first made; but where the defendant shall also have died, or his powers have ceased, in the meantime, the order of revivor, on both sides, may be made in the period limited in the last section: Provided, that where the death of a party is not known or for other unavoidable reasons the court may permit the revivor within a reasonable time thereafter."

When the death of a party occurs after judgment, section 589, O. S. 1931, provides:

"If either or both parties die after judgment, and before satisfaction thereof, their representatives, real or personal, or both, as the case may require, may be made parties to the same, in the same manner prescribed for reviving actions before judgment; and such judgment may be rendered, and execution awarded, as might or ought to be given or awarded against the representatives, real or personal, or both, of such deceased party."

And section 590, O. S. 1931, reads:

"If a judgment become dormant, it may be revived in the same manner as is prescribed for reviving actions before judgment."

The above-quoted sections of our statute were all adopted from Kansas. In Jones v. Nye, 56 Okla. 578, 156 P. 332, this court, speaking of two of said sections, which are now sections 584 and 590, O. S. 1931, said:

"These two sections were adopted from the Kansas statutes, and it is a well-settled rule of the law of interpretation of statutes that, when a statute of one state is adopted from the statutes of another state, the interpretation which the court of last resort of the state from which the statute was taken is presumed to have been adopted as the correct interpretation of the adopted statute.

"It is the contention of plaintiff in error that section 5300 of our statutes, supra, does not fix the time in which a judgment may be revived, and that consequently the time within which her action could have been commenced was fixed by the general statutes of limitations, but that statute had been so often construed by the Supreme Court of Kansas at the time of its adoption by this state to the effect that a judgment that has become dormant from any cause must be revived within a year, and that interpretation of the meaning of the statute not being contrary to the Constitution or any well-defined legislative policy of this state, and not being contrary to the decided weight of opinion of other states having similar statutes, we see no reason why that interpretation should not be adhered to by this court.

"Not only is it true that the Kansas Supreme Court has held that a judgment must be revived within one year from the date of its becoming dormant, but our own Supreme Court, in the case of Atchison, T. & S. F. Ry. Co. v. Fenton, in an opinion by Mr. Commissioner Crow, has held that, when a judgment has become dormant by reason of the death of the judgment creditor, and is not revived within one year thereafter, it becomes dead. A. T. & S. F. Ry. Co. v. Fenton, 54 Okla. 240 153 P. 1130. To the same effect see Smalley v. Bowling, 64 Kan. 818, 68 P. 630, in which the court said:

"'For nearly a quarter of a century this court has held, in substance and effect, that if, for any cause, a judgment becomes dormant, it can only be revived within one year from the time that such revivor could first have been had.'

"In Angell v. Martin, 24 Kan. 334, it was said by the court:

"'A dormant judgment cannot be revived without the consent of the defendant unless such revivor is applied for within one year after the same has become dormant.'"

When a judgment has become dormant there are two methods of reviving the judgment: First, by a revivor as provided by the statute, and, second, by an action to recover upon such judgment. That was the holding of this court in Jones v. Nye, supra, in which it was said:

"The statutory method of reviving a dormant judgment is cumulative, and such a judgment may be revived, or, at least, the obligation renewed, by an action to recover thereon being commenced in a proper court within one year from the date of its becoming dormant, and another judgment being recovered. Baker v. Hummer, 31 Kan. 325, 2 P. 808."

In the Jones v. Nye Case, the facts show that in a certain action Henry C. Jones and Melissa Jones, his wife, as plaintiffs, recovered a judgment against Luther A. Nye, the defendant. Nye appealed to this court. While the appeal was pending here, and on

February 20, 1912, Henry C. Jones died. Thereafter Melissa Jones was appointed and qualified as administratrix of his estate. The appeal to this court was later dismissed for the reason the action had not been revived in the name of the personal representative of Henry C. Jones within the prescribed statutory period of one year. Later, for the purpose of renewing the judgment that had become dormant by reason of the death of Henry C. Jones, one of the judgment creditors, the action of Jones v. Nye, supra, was instituted. The action was brought by Melissa Jones in her own behalf and as administratrix of the estate of Henry C. Jones against Nye, the judgment debtor, to recover a new judgment based upon the old. The trial court sustained a demurrer to the petition upon the ground the petition showed upon its face the action had not been commenced within one year from the time one of the judgment creditors died, and the judgment was affirmed by this court. In that case it was said:

"The petition shows on its face that the plaintiff in error, Melissa Jones, qualified as the administratrix of the estate of Henry C. Jones on the 12th day of April, 1912, and that this action was instituted in the court below on the 1st day of August, 1913, more than one year after a proceeding to revive, under the statute, could with due diligence have been commenced, and nearly eighteen months after the judgment became dormant by reason of the death of Henry C. Jones. The statute governing the revivor of actions in force at the time this action was instituted was as follows:

" 'An order to revive an action, in the names of the representatives or successor of a plaintiff, may be made forthwith, but shall not be made without the consent of the defendant, after the expiration of one year from the time the order might have been first made. * * *' (Section 5294, Rev. Laws 1910.)

"Section 5300 of the same statutes provided:

" 'If a judgment become dormant, it may be revived in the same manner as is prescribed for reviving actions before judgment.' "

And we further said:

"This action is not, strictly speaking, an action to revive the judgment, but is an action to renew the obligation of the judgment by recovering another judgment thereon. The judgment sued on became dormant upon the death of Henry C. Jones, but it could have been revived within a 'year from the time the order might have been first made,' and during the year within which it could have been revived it was not dead,

but only slumbering, so to speak, and retained enough vitality to sustain an action such as the one plaintiff has attempted to institute by the proceeding involved in this appeal. In other words, as long as there was enough life in the dormant judgment to sustain a revivor thereof, there was enough life therein to sustain an action thereon, but, when that time had expired within which an order reviving it could have been made, then every spark of life had died out of it; it was dead, and it could not sustain an action to recover a judgment thereon. 2 Freeman on Judgments (4th Ed.) par. 432; Baker v. Hummer, 31 Kan. 325, 2 P. 808; Dempsey v. Oswego Twp., 51 Fed. 97-99, 2 C. C. A. 110; A., T. & S. F. Ry. Co. v. Fenton, supra."

And further:

"It appearing on the face of the petition that the judgment creditor, Henry C. Jones, died on the 20th day of February, 1912, that Melissa Jones was appointed administratrix of his estate and qualified as such on April 12, 1912, and that this action was not commenced until August 1, 1913, and it further appearing that said judgment had not been revived in the name of the administratrix at the time this action was commenced, and that more than a year had transpired between the time a revivor of the judgment could have been had and the date of the commencement of this action, plaintiff's petition failed to state a cause of action by reason of the fact that the time had expired within which such an action could have been revived after the judgment sued on had become dormant and said judgment had become dead."

In Ballinger v. Redhead, 40 P. 828, by the Court of Appeals of Kansas, a judgment had been rendered in favor of James F. Redhead & Company, a partnership composed of James F. Redhead and Thomas Redhead. Thereafter and before issuance of execution, Thomas Redhead, one of the partners and one of the plaintiffs in the action, died. No revivor of the judgment was had in favor of any representative of Thomas Redhead, deceased. An execution was issued upon the judgment and certain real property sold thereunder. Two separate motions were filed, one to confirm the sale and one to set aside the sale upon the ground the sale was void. As to the exact question involved, the court said:

"The only question involved in this case is whether or not the judgment of James F. Redhead & Co. became dormant by the death of Thomas Redhead, a member of the firm of James F. Redhead & Co., and one of the plaintiffs, and whether the judgment should have been revived before an issuance of the execution under which the land was sold."

The court further said:

"In the case of State v. McArthur, 5 Kan. 283, Kingman, C. J., in delivering the opinion of the court, says: 'All proceedings upon a judgment, while dormant, are void, and will be set aside.' If the judgment was dormant, no execution could issue thereon, and no proceedings could be had in relation thereto, except such as are authorized for its revivor."

And further:

"It is contended by the defendants in error that no revivor is necessary except in the case of the death of the sole plaintiff or sole defendant. We do not concur with the defendants in this view of the case. The language of the statute is that where there are several plaintiffs or defendants in an action, and one of them dies, or his power as personal representative ceases, if the right of action survives to or against the remaining parties, the action may proceed, the death of the party or the cessation of his powers being stated on the record; but, before action can proceed after the death of one of the several parties, there must be a suggestion of the death made to the court, and entered of record, and some order of the court directing that the action may be proceeded in by the surviving parties to the action. Section 439 provided that if either or both parties die after judgment and before satisfaction thereof, their representatives, real or personal, or both, may, as the case may require, be made parties to the same, in the same manner as is prescribed for reviving action before judgment. If either party to the action die, the action cannot be proceeded in until suggestion of the death is made to the court, and the action revived in the name of the legal representative of the party deceased. So, if either of the parties to a judgment die, the judgment becomes dormant until such time as the death of the party is suggested, and the judgment revived in the name of the legal representative of the party."

The court in holding all proceedings void after the death of a judgment creditor and before revivor, said:

"The law requires that all actions, where either of the parties dies, must be called to the notice of the court, and a revivor ordered by the court, or an order by the court that the surviving party, plaintiff or defendant, be allowed to proceed to the final determination of the matter in litigation in the same manner as though the deceased party had survived. Under the statute providing for the revivor of actions and judgments, we are clearly of the opinion that the judgment of James F. Redhead & Co. against Ballinger et al., at the time the execution issued on it (10th day of May, 1889), was dormant, and that no execution could legally issue thereon, and all proceedings had after the death of Thomas Redhead were void, and that the sale made under the execution was invalid, and should have been set aside on the motion of the defendant Graham."

The above opinion was fully approved by the Supreme Court of Kansas in Newhouse v. Heilbrun, 86 P. 145, in which the court said:

"Did the judgment here become dormant by the death of one of the partners who were plaintiffs? The case of Ballinger v. Redhead, supra, decided by the Court of Appeals 11 years ago, has been recognized by this court as settled law. It was cited in Seeley v. Johnson, supra, followed in Denny v. Ross, 70 Kan. 720, 79 P. 502, and is cited as the law of this state in the following authorities: 22 A. & E. Enc. of Law, 221; 8 Enc. Plead. & Prac. 327; 17 Cyc. 996. There are no facts which distinguish that case from this. While opposed by some respectable authorities, its reasoning accords with our views and the policy of our statutes. We hold, therefore, that upon the death of one of the members of a partnership which is a party plaintiff in a judgment it becomes dormant, and no execution can issue thereon until the judgment becomes absolutely dead."

Thus it is well settled in this state, as well as in Kansas from which our statutes on revivor were adopted, that when there is more than one judgment creditor and one of them dies, the judgment becomes dormant and no valid proceedings can be had for its enforcement until there has been a revivor, and if no revivor is had or action instituted thereon for that purpose within one year from the time it could have been revived, the judgment becomes absolutely dead.

Plaintiffs in error claim that the effect of the attorneys' contracts held by D. H. Linebaugh and Paul Pinson made Linebaugh and Pinson equitable owner or assignees of a one-half interest in said judgment. We are inclined to the view the contract did not have that effect. However, under our view of the law it is not necessary to decide that question. In this connection, we further observe the record does not show them to be a party to the judgment or otherwise connected with it, except as attorneys for the two plaintiffs, in whose favor the judgment was rendered, until the executions under consideration were issued. They did cause those executions to recite that James Rabbit and C. H. Drew, administrator of the estate of Amos Rabbit, deceased, and Paul Pinson and D. H. Linebaugh, equitable assignees, obtained the judgment. However, that recital is not supported by the judgment, or any other part of the record. In fact, the praecipes they filed for the issu-

ance of those executions do not so recite, but, on the contrary, are signed by Linebaugh and Pinson as attorneys for plaintiffs, and the plaintiffs are named as James Rabbit and C. H. Drew, administrator of the estate of Amos Rabbit, deceased. In this connection, we further observe that on September 9, 1934, C. H. Drew, as administrator, and Linebaugh and Pinson filed a motion in the action reciting the rendition of the judgment; that by virtue of the attorneys' contracts held by Linebaugh and Pinson, said C. H. Drew, as administrator, was entitled to one-fourth of said judgment, James Rabbit one-fourth, and Linebaugh and Pinson one-half, and other recitals not necessary to mention. On the same date, and without notice, an ex parte order was made by Judge Hunt, one of the judges of that court, finding substantially in accordance with the allegations of said motion and directing that execution be levied for three-fourths of the judgment, being the one-fourth owned by Drew, as administrator, and one-half claimed by Linebaugh and Pinson. Plaintiffs in error claim that order established the interest of Linebaugh and Pinson in said judgment, and that said order has never been vacated. We find it unnecessary to decide that question. If it be conceded that Linebaugh and Pinson were judgment creditors by virtue of attorneys' contracts which they held, or by reason of the order made by Judge Hunt, or both, then there would have been four judgment creditors instead of two, and upon the death of any one of them the judgment would have become dormant and no valid execution could issue unless and until revived, and if not revived within the time required by the statute, the judgment would become dead and no proceeding of any kind could be maintained thereon.

Plaintiffs in error insist that the two judgment creditors, C. H. Drew, administrator, and James Rabbit, who were the sole plaintiffs in the action, could have maintained separate actions against defendants and each recovered a separate judgment, but that they joined in the same action as a matter of convenience, and that, therefore, each in fact owned one-half of the judgment subject to the rights claimed by Linebaugh and Pinson. Be that as it may, they elected to and did bring it as a joint action and recovered a joint judgment, and we must now deal with it as such.

Whether or not some one other than the judgment creditors, as shown by the judgment rendered, is beneficially interested in the judgment, can make no difference in deciding the questions here involved. In Updegraff v. Lucas, 93 P. 630, by the Supreme Court of Kansas, it was said:

"The demurrer to the answer should have been sustained. None of the facts stated therein could affect the dormancy of the judgment. The statute declares the conditions which render a judgment dormant, and provides the manner in which it may be revived. Sections 430, 433, 434, 489, Code Civ. Proc. (Gen. St. 1905, secs. 5328, 5331, 5332); Seeley v. Johnson, 61 Kan. 337, 59 P. 631, 78 Am. St. Rep. 314. There is no exception provided by which a judgment in the name of one person shall be kept alive after his death by a showing that the cause of action, or the judgment in which it merged, belonged, in fact, to another."

Also, in Hopkins v. Stockdale, 11 Atl. 368, the Supreme Court of Pennsylvania says:

"But if the judgment is for an entire sum, payable at one time, part owners cannot issue separate writs of fi. fa. for the collection of their separate interests. The judgment cannot be subdivided by the part owners, either for the purpose of collection or revival."

Likewise, we cannot permit any consideration of the justness of the judgment or the equities of the case to control our decision, but we must declare the law as we find it.

We find the judgment rendered was a joint judgment in favor of two judgment creditors. One of them died and no action was taken to revive the judgment in favor of his representatives until considerably more than one year from the time it could have been revived. Application for revivor was then made and denied. No appeal from that order was taken and it became final. Thereafter the executions in question were issued upon the judgment. At the time the executions were issued the judgment had passed the stage of dormancy and was absolutely dead. Therefore, the action of the lower court in quashing the executions should be and is affirmed.

The Supreme Court acknowledges the aid of Attorneys Frank G. Anderson, B. A. Ames, and Leo Considine in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Anderson and approved by Mr. Ames and Mr. Considine, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.