## APRIL TERM, 1945

GEORGE NICK,

*Plaintiff in Error,*

vs.

CLEM JOHN and EMMANUEL VLASTOS,

*Defendants in Error.*

(No. 2289; April 10th ,1945; 157 P. 2d 563)

For the Plaintiff in Error the cause was submitted upon the brief and also oral argument of Lin I. Noble,

Esq., of Thermopolis, Wyoming, and A. D. Walton, Esq., of Cheyenne, Wyoming.

For the Defendants in Error the cause was submitted upon the brief and also oral argument of C. W. Axtell, Esq., of Thermopolis, Wyoming, and W. O. Wilson, Esq., of Cheyenne, Wyoming.

## OPINION

BLUME, Chief Justice.

This is a case for an accounting between the plaintiff and defendants, who were partners in a coal mine, upon dissolution of the partnership in March, 1943. The court rendered judgment in favor of the plaintiff and against the defendants for the sum of $1378.16, and from that judgment the plaintiff has appealed.

The partnership, the terms of which are in dispute, was organized about August 24, 1938, for the purpose of mining coal from the so-called Osborn Mine, which mine was and is held under a lease from the State of Wyoming. That lease contains provisions that the

lessee must pay a rental of $200, plus a certain percentage on the coal mined; that the mine must be kept in good condition and must be fully protected. The lease contains other provisions which need not be set out herein. Plaintiff claims that he is entitled to an equal one-third interest therein with the defendants, Emanuel Vlastos and Clem John. The defendants seem to have been in partnership in other matters, and there is no dispute in any way as between themselves. The Osborn Mine was bought in the name of Vlastos on August 24, 1938, for the sum of $18,000; the sum of $4,000 was paid at that time; $3400 of that amount was contributed by the defendants and $600 by the plaintiff. The balance of the payments was made thereafter: $4500 in 1939, $4500 in 1940, and $5000 in 1941. Plaintiff claims and testified that he had only $600 and paid that; that the defendants agreed to pay the additional amount necessary to make up 1/3 of the $4000; that he was to be superintendent of the mine, having had 30 years experience in mining; that he performed various duties in connection with the mine, doing three men's work and often worked late at night in selling coal; that he hired men, bought property and sold coal; that he was to be paid, according to the agreement between the parties, at first the sum of $5.00 per day and thereafter whatever his services would be worth, and that these services were worth $300 per month. It seems that he became dissatisfied in October, 1942, and quit, going to work at some other place. He served notice on the defendants in March, 1943, desiring a settlement between the parties. The partnership, it is agreed, was formed for no definite period of time.

The defendants on the other hand claim that the plaintiff should have a one-third interest only in the operation of the mine and the profits therein and in the equipment situated on the mining property, but that he

was not to have any interest in the mine itself. They denied the fact that the defendant was to be superintendent of the mine; that defendant claimed to be an experienced miner, but proved himself to be otherwise, and that he did nothing but perform common labor. We shall set out some of the testimony, on behalf of the defendants, verbatim. The parties herein are all of Greek nationality and some of them were not well versed in the English language. Vlastos testified in part:

"A. Well, Osborn Mine estate was for sale. Like a mine, there was a market, who will want to buy; lot people make prospect and look it over so I did myself and John, and later George Nick came along. He told us he know all about mines and all that. We don't know him well so he want to buy lease and equipment $18,-000.00 for Osborn mine. George come up and he had no job; work at Gebo and it shut down; he had no job. He come up and say him will put $600.00 in to buy mine and agree all expenses, operations and profits go three-way, be divided in three. The way he was talking, he was capable miner so I take chances; take him on that condition on the deal. Finally take mine over and start operations. He don't know anything about mine, but shovel coal, so I hire man to be boss. I was there all time myself. * * * At the time he come and come in with us to put up $600.00 to buy mine, we agreed to be equal one-third on expenses, improvement of mine and profits. We take him in. Way he was talking, was good man, know his business; so after take him in, start work on mine. He don't know anything, just shovel coal. Anybody can do it. * * * Agreement was, you know, we buy mine, me and John, and George want to come in because he was out of job ,first place, and he don't have no money to go on, so he decides if let him come in, put up $600.00 to buy equipment, he willing to be on profits and expenses and operation but not have nothing to do with State lease. So after that, I went see Ray Foutch and we close deal so we make contract and papers in my name. * * * Yes, well to put up $600 and we agree to come in on operation, expenses and profits, he have one-third, see. * * * We agree in-

vest more money and figure on remodeling the mine. We agree to advance the money to improve mine because needed improvement and we agree profits get our money back. What got left, we divide, say, we divide three ways if anything got left. So we work first years, 1938, in the fall, and we agree, George and Nick and I, at the mine draw no salary, leave our money in the salary to next fall, 1939, to buy equipment and remodel mine the way we did, and after that remodel mine. 1938, fall, start mine coal. He get $50.00, I get $50.00 a month in the first months. So, in the spring, latter part April, the mine don't have no coal sell,—no demand, so George Nick went to work for Sheridan Coal Company. In the fall come back. After make contract to sell coal to them, he come back and we start operating the mine. He hoist the coal. He was working on top tipple, and we have some other fellow. We decide draw $100.00 for him and $100.00 for me from Osborn Mine because always we never work in the summer time. If don't work in summer time, can't afford to pay $200.00 for salary. * * * We agree if we dissatisfaction between one party, always he can get what is entitled to for equipment. Like George Nick want quit now, he is entitled to equipment after we pay all expenses and debts."

The testimony further showed that in case of settlement the three men were to be repaid what they advanced. It appears herein that the plaintiff was paid the sum of $2116.05; Vlastos the sum of $2935.00, and Clem John the sum of $800.00. The equipment connected with the mine in 1938 appears to have been of little value. Improvements were made subsequently by the partners, costing $16,224.37. The income tax reports were introduced in evidence for 1938 to 1941, both inclusive, showing that each partner made a profit of $6265.20. The accounts between the parties and other facts will be mentioned hereafter. It appears that plaintiff had the books of the partnership in his possession for a number of months prior to the trial, for the purpose of examination.

The accounts before us are not in very good condition. We have used much midnight oil, as Justinian used to say, in trying to unravel the confusing facts as they appear in the record herein. We have done the best we could, hoping that our conclusions herein are not too far from the truth.

I. Counsel for the plaintiff complain that the court did not appoint an accountant to report the facts, shown by the accounts, to the court. The court had been asked to do so and in fact the parties had agreed that an accountant might be appointed. We are unable to see that the court erred in its action in this respect. The main facts were in dispute, including the terms of the agreement between the parties, and the value of the property on hand in March, 1943, and an accountant could not have gathered the true facts from the books. During the trial of the case R. J. Houston, an accountant, was called as a witness and he testified. So far as we are able to see, his testimony was of very little value, if any, and any other accountant would have been situated the same as this witness.

II. The defendants introduced in evidence what is called Exhibit 5, consisting of computations, shown on seven pages of the exhibit. These computations were for the most part taken from the books and show a summary of the accounts. Plaintiff objected to the introduction of this exhibit and claims that the court erred in admitting it in evidence. The court's ruling was as follows: "The exhibit offered at this time will not be received as concrete evidence but will be received by the court for the purpose of assisting the court in arriving at what the books now in evidence show." We cannot see that the court committed any error. A number of exhibits, including the ledger kept by the partnership and another book showing in detail the payroll sales and other detailed matters, involving the

transactions of the partnership were introduced in evidence. Exhibit 5 in the main showed the various items as shown by the books of the partnership or by the testimony, and furnished the court with a helpful method to determine the disputed facts in the case. According to the court's ruling, the effect of the exhibit was no greater than if the same summary of accounts had been presented to it, orally, or in writing, upon argument of the case. It is said in 2 Jones on Evidence (2d Ed.) 1424, quoting from a case:

"It was therefore proper, as a matter of convenience, to permit plaintiff, who was familiar with them, to give a summary of their contents as to net profits. Where the results of voluminous facts contained in writings, or of the examination of many books and papers or records, are to be proved, and the necessary examination of this documentary evidence cannot be conveniently or satisfactorily made in court, it may be made by an expert accountant or other competent person and the results thereof may be proved by him, if the books, papers, or records themselves are properly in evidence, or their absence satisfactorily explained, the admission of such testimony being a matter resting largely in the discretion of the trial court. It seems, however, that the jury are not bound by the results thus ascertained, but may make their own calculations from the books and papers in evidence."

III. On pages 2 to 5 of Exhibit 5, submitted to the court, the defendants computed the amounts received by the partnership as well as the amounts paid out by it. In that computation was left out the sum of $15,-323.03. This error is conceded by counsel for the defendants, but he contends that this amount was, nevertheless, deposited in the Bank, which seems to be true, and, therefore, the error can be of no benefit to the plaintiff. Another error appears in the computation of disbursements. The total amount paid by the partners appears to be the sum of $14,700.00 of which the plaintiff contributed $600.00; the total amount paid for the

mine is the sum of $18,000.00, plus $333.80 interest. The difference between these amounts is $3633.80. That was paid from some source and it appears to have been paid from the funds of the partnership. With these corrections and also adding the amount of moneys which were withdrawn or paid to the partners, the account would seem to be as follows:

*Receipts:*

| | |
|---|---:|
| Sales of coal | $ 97,161.67 |
| Sales of coal (overlooked) | 7,676.98 |
| Sales of coal (overlooked) | 7,646.05 |
| Item 2, Ex. 5 Rental, Sales | 1,467.46 |
| Item 2, Ex. 5 from Equipment Sold | 4,310.13 |
| Rec'd from payments, advancements by partners | 14,700.00 |
| Total Receipts | $132,962.29 |

*Paid Out:*

| | | |
|---|---:|---:|
| On mine | $ 3,633.80 | |
| Operating Expenses | 88,263.10 | |
| Equipment | 14,424.97 | |
| Screens | 1,800.00 | |
| Withdrawals: | | |
| Vlastos | 2,935.00 | |
| Clem John | 800.00 | |
| Nick | 2,116.05 | 113,972.92 |
| Balance | | $ 18,989.37 |

This is as against balance on hand, figured at $15,394.-93. The difference is probably represented by depreciation, so this computation, as corrected, cannot be seriously criticized.

IV. *Salaries.* Plaintiff testified, as already stated, that he was to receive at first the sum of $5.00 per day and thereafter what his services were worth, and that his services were worth $300 per month. Other testimony introduced in the case showed that his services were worth $8.00 per day. The testimony of Vlastos,

as shown above, was that no salaries were to be paid the first year, but that thereafter it was agreed that they should have $100 per month. Apparently the sum to be paid to plaintiff was to equal that paid to the defendants, but it does not appear that Clem John, one of the defendants, agreed to this. The books are in a very unsatisfactory state of condition. Salaries therein of $100 are credited in the ledger to the defendants, jointly, commencing with November 28, 1940, to August 13, 1942, a total of $1600.00, while Exhibit 5, introduced by the defendants, shows that the defendants jointly were paid $3735.00, part of which arises evidently by reason of $2000 taken by Vlastos out of the funds of the partnership. So we shall except that sum as correct. Small payments were made to the plaintiff in 1939 to October, 1940. He is credited with $50 in October ,1940, and with $100 thereafter to August, 1942, and with $25 in October, 1942. Defendants claim that Vlastos should be entitled to $6200. The trial court, as we understand the record, allowed no salaries at all, evidently following the provision of Section 81-401 Rev. St. 1931, that subject to an agreement between the parties "no partner is entitled to remuneration for acting in the partnership business except that a surviving partner is entitled to a reasonable compensation for his services in winding up the partnership affairs." The court stated that to allow any salaries would be to the disadvantage of Clem John, that *if* any salaries were allowed it should be $5400 instead of $6200. The judgment rendered by the trial court does not reflect the allowance of any salaries whatever. The court evidently discredited the testimony of all of the parties on this point. Not being the judges of the credibility of the witnesses, we cannot say that this was error. However, the payments made to the parties should be equalized. The total payments made to them add up to $5851.05, one-third of this is

$1950.35, so that plaintiff was overpaid the sum of $65.70.

Mary Vlastos was employed as a bookkeeper for the partnership by the consent of all. The record indicates that her services were worth $75.00 per month. She worked from August 24, 1938, to March 15, 1943. She worked then for 4 years and 6 2/3 months at a salary amounting to $4100 . We see no reason why this should not be allowed.

V. *Interest.* In the motion for a new trial plaintiff complained of computation of interest on the moneys paid by the partners into the partnership but we find nothing about that point in the brief of plaintiff herein so the point appears to be waived. Counsel for plaintiff have made no objection to the method of computation of interest so we shall accept the amounts as they appear in the computation made by the defendants.

VI. *Assets and Liabilities.* There was a good deal of conflict on the question of the value of personal property (outside of cash) and the value of structures on the mine. It is clear that the court accepted the testimony of the defendants on that point, and since we are not the judges of the credibility of witnesses, we cannot disturb the finding of the court. Counsel for the plaintiff claims that the cash on hand at the time of the dissolution of the partnership was $10,816.92. Mary Vlastos testified that it was the sum of $7645.93. The court evidently accepted her testimony on that point. Counsel have not shown us that this is error. Rule 14 of this court prescribes that the briefs of counsel "shall refer specifically to the page, or portion of the record, where the question under discussion arises." It would have materially aided this court in this case if counsel had followed that rule, as nearly as possible. Examining the ledger, showing deposits and withdrawals from the Bank, we find that the last item thereon is that of

July 30, 1942. The balance on that date is stated to be $604.75. In another unnamed column we find mentioned the sum of $8642.30, which perhaps was taken by counsel of plaintiff as showing part of the balance. It is not indicated what that sum means since, as shown, the balance is stated to be $604.75. It would seem that the actual balance could have been easily shown by obtaining a statement of the balance shown by the bank books, and adding to that the checks and cash still undeposited. But no such statement from the Bank was obtained; no inquiry as to undeposited amounts was made. Mary Vlastos was not examined how she arrived at the sum which she stated to be the balance. We have spent much time, with meticulous care, to find the actual facts from the books before us. But we have not succeeded. So that all we can do is to accept the finding of the court.

We, accordingly, compute the property of the Company on hand, aside from the mine itself, as follows, in conformity with the amounts shown in Exhibit 5, namely:

| | |
|---|---:|
| Money deposited for bond under lease to coal land (which was evidently taken from the funds of the partnership) | $ 2,024.00 |
| New screen | 1,800.00 |
| Pit cars | 225.00 |
| Rails | 400.00 |
| Truck | 500.00 |
| Mining Machine and Motors | 2,500.00 |
| Houses | 300.00 |
| Cash on Hand | 7,645.93 |
| Total | $15,394.93 |

And from what we have heretofore stated the liabilities are as follows:

| | | |
|---|---:|---:|
| Due Mary Vlastos | | $ 4,100.00 |
| Emmanuel Vlastos, principal | $7450.00 | |
| interest | 2130.12 | 9,580.12 |

Clem John, principal ............................ 6650.00
    interest .......................... 1946.75  8,596.75
George Nick, principal ....................... 600.00
    interest ....................... 223.00  823.00

                $23,099.87

If, accordingly, plaintiff had no interest in the mine itself he would only be entitled to judgment herein of about 15/23rds of $823.00 or about $540.00, which would mean a loss of $60 on the money which he originally advanced. He worked in the mine for four years and withdrew $2116.05. Subtracting the $60 would leave him $2056.05. That is rather a small sum to allow for four years work, and it is no wonder that the court felt that more should be allowed, if possible, and so gave him $1378.16. We have not, however, been able to find any logical basis for this sum. Counsel for defendants have not pointed out any ,but have contented themselves with setting forth various tables showing that plaintiff should not have been allowed anything at all. However, in order for us to decide this case, we must find a reasonable basis for the judgment of the trial court, or in default thereof, we must find some other reasonable basis for our decision herein, upholding the trial court, of course, as nearly as the record before us permits.

VII. The main point of contention herein is as to whether or not the plaintiff was entitled to an interest in the mine itself, which, as stated before, was bought for $18,000. The court in its oral opinion stated that the plaintiff was not entitled to any interest in the mine itself, saying that if the mine had developed into a very great paying proposition early and the plaintiff had then seen fit to sell and quit, he would have acquired a one-third interest in the mine for the small sum of $600.00. We need not say what would have been our decision had the court carried this thought to its logical

**304**

conclusion, and if we were able to find some reasonable basis for the amount of the judgment rendered herein. But, as stated before, we have not been able to find such reasonable basis. Counsel for the plaintiff conjectures that the judgment was arrived at in the following manner:

"1. Giving Nick credit for the net profits as shown by income tax returns, $6265.20, and deducting from this $6000.00 as Nick's proportionate share of the purchase price, leaves ............................................$ 265.20

2. Cash advanced by Nick at the time of the purchase of the mine .............................$ 600.00

3. Total assets at the time of trial (shown by the summary statement Ex. 5 of Defendants in error, 197 B. E.) $15,394.-93, Nick's advance of $600.00 is 3 1/3% of the $18,000.00, the original purchase price, 3 1/3% of the $15,394.93 amounts to ..........................................................$ 513.16

Total ..........................................................$1378.36"

The conjecture bears the imprints of probability. The income tax returns disclosed that the profits of the plaintiff were $6265.20. The item of $265.20 appears to have been taken from that sum. The witness Houston testified that $600.00 constituted 3 1/3% of the total investment of $18,000.00 which is correct, and that 3 1/3% of the personal assets of $15,394.93 is $513.16, which, too, is correct. So we again find an attempted connection with the purchase price of the mine. Obviously, however, if plaintiff was charged up with $6000.00, the 1/3 cost of the mine, that would be equivalent to payment by him of that sum, and if he paid 1/3 of the cost of the mine, the only reasonable conclusion is that he should have 1/3 interest in the mine. The theory of the defendants apparently is that they should be repaid the money which they put into

the mine and at the same time have the sole interest in the mine. That would seem to require a double repayment,—first, in money, and, second, by way of interest in the mine. That does not appear to be reasonable. Furthermore, the only money the defendants paid for the mine was the initial payment of $3400.00 (added to $600 paid by plaintiff), $4500 more of the principal was paid on July 1, 1939; $4500 more on March 29, 1940, and $5000 more on March 24, 1941. All of these payments, so far as we are able to find were made from the funds of the partnership. The defendants are shown by the books to have made certain advancements ,but not one of the items shown in the ledger, except the first $4000, correspond with any of the payments made on the purchase price of the mine. Thus, $14,000, plus interest, appears to have been paid out of the profits or funds of the mine. After that was done, the reason advanced by the court for not allowing the plaintiff any interest in the mine would seem to have disappeared. The lease to the mine, it is true, carried certain burdens but that does not seem to be sufficient reason for excluding the plaintiff for any interest in the mine under the circumstances above indicated.

The mine itself, of course, aside from the improvements, was not worth in March, 1943, what it was worth when the mine was bought, for much coal had meen taken from it in the meantime. The testimony for the defendants shows that the plaintiff came to them, wanting the partnership to sell the mine for $12,000. He himself testified that, "I went and told them, if they want to sell the mine they could have sold it for $12,000 and if they don't want to sell it, give me my share of 1/3." That is the only indication in the record as to the value of the mine itself in March, 1943. It is not a satisfactory method of showing the actual value, it might be greater or less; it might include the im-

provements and it might not, but it is the only basis which we have before us and in order to dispose of this case at all, we are perforce compelled to accept it, unless we should send the case back for a new trial.

Based then upon what we have heretofore stated, we make the following computations:

*Assets of Partnership:*

| | | |
|---|---|---|
| Mine | $12,000.00 | |
| Property (aside from mine itself) | 15,394.93 | |
| | $27,394.93 | $27,394.93 |
| Balance Brought Forward | | $27,394.93 |

*Liabilities:*

| | | |
|---|---|---|
| To Vlastos | $ 9,580.12 | |
| To Clem John | 8,596.75 | |
| To George Nick | 823.00 | |
| To Mary Vlastos | 4,100.00 | |
| | $23,099.87 | $23,099.87 |
| Balance of Assets | | $ 4,295.06 |
| 1/3 of this due Plaintiff | | $ 1,431.68 |
| Plus his cash paid and interest | | $ 823.00 |
| | | $ 2,254.68 |
| Less overpayment on withdrawals | | $ 65.70 |
| Net amount due Plaintiff | | $ 2,188.98 |

There are a number, at least half a dozen, other ways to figure the amounts due, depending upon what testimony we accept. By some of them, the plaintiff would receive more, by others less. For instance, if we figure that the plaintiff meant to surrender all of his interest for $4000 and we further figure, along with the trial court, that no salaries were payable, then, subtracting $2116.05 from $4000.00, the plaintiff should have judgment for $1883.95. By another method, the amount which plaintiff should have would be approximately

the amount first above figured. If namely, we should allow salaries at $100.00 per month we could not well allow it for more than 43 months, inasmuch as Vlastos testified that nothing should be drawn for the first year. In that event, there would be due to plaintiff a remainder of $2184.00 and to the defendants combined ($4300 less $3735) the sum of $565.00. And if we should figure, as plaintiff seems to have done, the value of the mine plus the improvements at only $12,000.00, and add that to the cash of $7645.93 on hand, that would make total assets of $19,645.93. And the situation would then be approximately as follows:

| | |
|---|---|
| Assets | $19,645.93 |
| Less due Mary Vlastos | 4,100.00 |
| Net Assets | $15,545.93 |
| Debts: | |
| To Vlastos | $ 9,580.12 |
| To Clem John | 8,596.75 |
| To George Nick | 823.00 |
| To George Nick, salary | 2,184.00 |
| Defendants' Salary | 565.00 |
| | $21,748.87 |

There would then be payable on each of these items of indebtedness, out of the assets, approximately 71%, or there would then be due to plaintiff approximately $2135.00.

VIII. Counsel for plaintiff complains that all that he received was a personal judgment. He states that "the fallacy and injustice of a judgment decreeing to one or more partners all the interest of one partner in the partnership property, and giving the dispossessed partner a personal judgment, is readily shown by the fact that such a judgment may be as worthless as the paper on which it is written." The court did not directly set over the property of the partnership to the defendants but did so indirectly, and we think that the

court was right under the circumstances. No definite rule seems to exist as to the disposition of the property upon dissolution of a partnership in a case such as that before us. See Forbes v. Becker, 150 Okl. 281, 1 P. 2d 721. In the case at bar the plaintiff had only a comparatively small interest in the property. A division in kind would not be practicable. Nor do we understand from the contention of the plaintiff that this action of the court was wrong. His only contention appears to be that he was not permitted to retain his interest in the property as security until he is paid the amount which is due him. It is stated in 47 C. J. 1183, that: "In the dissolution of a firm, each partner has an equitable lien on the firm assets for whatever is due to him from the firm after payment of firm debts." And that appears to be the effect of Subdivision 1 of Section 81-610 Rev. St. 1931, which provides:

"When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his co-partners and all persons claiming through them in respect of their interest in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners."

In this case the partnership was not dissolved in contravention of any partnership agreement and the quoted provision appears to be applicable herein. Judging from the circumstances in this case the point contended for by the defendant is probably academic. Still he is entitled to his rights under the law and the judgment must be modified accordingly. It is, therefore, ordered, that the judgment herein be modified by allowing to the plaintiff the sum of $2188.98 and that this amount shall remain a lien upon the property of the partnership until that amount is paid. With this modification the judgment of the district court is affirmed. Provided,

however, that since the record before us is such that it is impossible for us to deal out exact justice to either party, if the plaintiff or the defendants shall within thirty days file a statement in this court desiring a new trial, and sufficient showing therefor is made, we may then direct a new trial to be had. The costs in this court will be divided equally between the parties, no costs being taxed for the briefs.

*Modified Conditionally.*

RINER, J., and KIMBALL, J., concur.