HARBER v. McKEOWN et ux.

No. 32077. Feb. 12, 1946.

*169 P. 2d 759.*

Pryor & Wilbanks, of Holdenville, for plaintiff in error.

D. D. Brunson and J. B. Gilbreath, both of Ada, for defendants in error.

HURST. V. C. J.  On November 8, 1937, the appellant, J. N. Harber, re-

covered a joint and several judgment in the district court of Coal county against Tom D. McKeown and Anna J. McKeown for $5,097.17 together with attorney fees, on a note secured by a mortgage covering real estate in Coal county, and a decree foreclosing the mortgage securing the note. Anna J. McKeown died on June 5, 1940. The judgment against her was not revived. On July 18, 1942, Tom D. McKeown executed a quitclaim deed conveying the mortgaged property to H. T. Channel, the deed reciting:

"It is understood that the grantee herein is to pay to J. N. Harber the sum of $50, which the grantor estimates as the value of the lien on said property held by the said J. N. Harber, and agrees that the said J. N. Harber may accept the same and release said property above described from said lien, so that the grantee herein may have a clear title so far as said lien or claim of the said J. N. Harber affects said property, together with all and singular the hereditaments and appurtenances thereunder belonging."

On August 11, 1942, Harber signed a receipt directing the court clerk to enter a credit on the judgment for $50. This receipt was filed on September 5, 1942. On November 4, 1942, four days before the five years from the date of the judgment was to expire, Harber caused a general execution to be issued on said judgment, directed to the sheriff of Pontotoc county, commanding him to levy upon the property of Tom D. McKeown and Anna J. McKeown. On November 9, 1942, Tom D. McKeown filed an application to recall the execution. The issues were made up on said application and evidence was heard, and on August 10, 1944, the court entered judgment recalling the execution on the ground that no special execution had been issued directing the sale of the mortgaged premises and on the further ground that the judgment was dormant as to Anna J. McKeown. From that judgment, Harber has appealed.

The cause was before us in a former appeal involving a different question.

Harber v. McKeown, 195 Okla. 290, 157 P. 2d 753.

1. The first question for decision is whether failure to revive the judgment against Anna J. McKeown within one year after her death rendered the judgment dormant and unenforceable against Tom D. McKeown. McKeown argues that this question should be answered in the affirmative on authority of Drew v. Thurlwell, 173 Okla. 405, 48 P. 2d 1066, 100 A. L. R. 806. The question involved in that case was whether failure to revive a joint judgment on the death of one of the judgment *creditors* rendered the judgment dormant as to the other judgment creditor. On authority of some Kansas cases, this question was answered in the affirmative. The question involved in the instant case is the reverse of that involved in the cited case. Here, one of the judgment *debtors* died and the judgment was joint and several. In Richardson v. Painter, 80 Kan. 574, 102 P. 1099, the Kansas court distinguished the two rules and answered the question before us in the negative. We think the reasoning in that case is sound and is applicable here. We accordingly hold that the judgment against Tom D. McKeown was not dormant at the time the execution was issued. See Tucker v. Gautier, 196 Okla. 267, 164 P. 2d 613. Our statute being silent on the question, we are of the opinion, and hold, that execution could properly issue against McKeown, and he is not in position to complain because the execution was issued in the names of both himself and his deceased wife. Of course, the execution could be levied only upon his property. See 23 C. J. 385; 33 C. J. S. 203; 10 R. C. L. 1232, note 16; 21 Am. Jur. 23; Bancroft, Code Practice and Remedies, § 1908; Christ v. Flannagan, 23 Colo. 140, 46 P. 683; 61 L. R. A. 353 at 387, note.

2. The next question argued is whether a general execution could lawfully issue. McKeown argues that, before a general execution could issue, it was necessary for the plaintiff to cause a special execution to issue for sale of

the mortgaged premises and a determination made of the amount of the deficiency under 12 O. S. 1941 §686. That section applies to sales on execution and not to voluntary sales as here. The plaintiff argues that this rule does not obtain here for the reason that McKeown conveyed the land to Channel with the understanding that Channel would pay Harber $50 to be applied on the judgment and the judgment lien would be released by Harber and that McKeown thereby waived the right to have the mortgaged premises sold before a general execution could issue. We think Harber's contention is sound. The lien against the mortgaged premises was extinguished by said conveyance and the receipt issued by Harber, and the deficiency was thereby established. In Anderson v. Warren, 196 Okla. 256, 164 P. 2d 221, we held that the judgment creditor in such a case can release his lien and have a general execution issued without first causing a special execution to be issued.

Judgment reversed, with directions to overrule the motion to recall the execution.

GIBSON, C.J., and RILEY, OSBORN, BAYLESS, WELCH, CORN, and ARNOLD, JJ., concur.