ED HUME and A. C. GRANDBOUCHE,

*Plaintiffs and Appellants,*

vs.

W. P. RICKETTS and J. F. WAISNER, doing business as Royal Cattle Company (By Order of Revivor, EMILY SORHAGE, IRMA SORHAGE and CHRISTINE JORDAN, substituted for and successors to W. P. RICKETTS, deceased),

*Defendants and Respondents.*

(No. 2504; 240 Pac. (2d) 881; February 13th, 1952)

For the plaintiffs and appellants the cause was submitted upon the brief of Anderson and Morgan of Gillette, Wyoming, and oral argument by Mr. Thomas Morgan.

For the defendants and respondents the cause was submitted upon the brief of H. Glenn Kinsley and James Munro, both of Sheridan, Wyoming, and oral argument by Mr. James Munro.

226

OPINION

PARKER, District Judge.

This cause arises under the law relating to revivor of judgments. Appellants, Ed Hume and A. C. Grandbouche, partners, were plaintiffs in a suit on contract filed in 1919 in Campbell County, Wyoming, against W. P. Ricketts and J. F. Waisner, d/b/a Royal Cattle Company, defendants. Judgments on cross-petition for $20,529.86 in favor of defendants and against plaintiffs

was entered October 20, 1920. No appeal was prosecuted and no payment of judgment has been made. The record shows Petition and Motion for Revivor filed by defendants November 20, 1929, thereafter a Conditional Order of Revivor, affidavits of attorney for Ricketts and Waisner for constructive service on appellants, affidavits of the Sheriff of Fall River County, South Dakota, showing constructive service of the Conditional Order on each of appellants and objections to the jurisdiction by an attorney purporting to act for appellants. The objections were overruled and a Judgment of Revivor entered on February 7, 1933.

On February 17, 1950, Emily Sorhage, Irma Sorhage, Christine Jordan and J. W. Waisner, respondents, filed a Motion to Revive Judgment and to Substitute Parties, supported by an affidavit alleging that

(a) Emily Sorhage, Irma Sorhage and Christine Jordan were legatees of W. P. Ricketts, whose estate was settled in Sheridan County, Wyoming, after his death March 22, 1944, and

(b) An affidavit that the judgment against appellants had not been paid and should be revived.

A Conditional Order setting hearing date was served on appellants by constructive service and they filed a Motion to Set Aside the Conditional Order Reviving Judgment and Substituting Parties. The motion was overruled by the Court and appellants ordered to appear and show cause why judgment should not be entered. Appellants then filed an Answer to Order to Show Cause and Petition to Vacate Judgment, in which appellants alleged that

(a) There was no proper service on them prior to the revivor in 1933 and no jurisdiction of the Court to enter an Order of Revivor at that time, and

(b) There was no revivor for more than a year after the death of W. P. Ricketts on March 22, 1944, and that the judgment was thereafter wholly and absolutely dormant.

Respondents' Motion for Judgment on the Pleadings and Demurrer were both sustained by the Court and Judgment for Revivor was entered against appellants for $63,243.34. From this Order of Revivor appellants prosecuted appeal contending that any revivor is improper because

1. The 1933 revivor was without jurisdiction of appellants and was of no effect, and

2. The limitation of one year under § 3-2313, W.C.S. 1945, applies to a Revivor of Judgments under § 3-3904, W.C.S. 1945, providing that representatives of deceased persons "may be made parties to the judgment *in the same manner* as is prescribed for revival of actions before judgment. . . ." (Italics supplied.)

It, therefore, follows that two questions are before us:

1. May the validity of the 1933 revivor be attacked in this action, and

2. If the 1933 revivor was valid, is a present revivor of the judgment, for practical purposes, precluded by the one year limitation of § 3-2313, W.C.S. 1945?

Discussing these matters in the order mentioned, we first consider the validity of any 1933 revivor and the result of appellants' challenge to its validity. Jurisdiction of the Court over the parties is an essential to the validity of any judgment and a personal judgment rendered without such jurisdiction is void. See 31 Am. Jur. "Judgments" Paragraph 409; 49 C.J.S. "Judgments"

Paragraph 19b. However, the judgment is presumed to be valid and the presumption in favor of jurisdiction extends to jurisdiction of the parties, 31 Am. Jur. "Judgments" Paragraphs 415 and 417. By the general rule, a collateral attack may not be made upon a judgment where the absence of jurisdiction over the parties does not appear upon the record. See 49 C.J.S. "Judgments" Paragraph 401; 31 Am. Jur. "Judgments" Paragraph 602, citing numerous cases, some collected in 23 Am. St. Rep. 105 and 44 Am. St. Rep. 562; Reynolds vs. Lloyd Cotton Mills, 177 N. C. 412, 99 S.E. 240; Murrell vs. Stock Growers National Bank, C.C.A. Wyoming, 74 Fed. 2d 827. It seems to be the general rule that a void judgment, such as one wherein the Court lacks jurisdiction over the parties, can be attacked collaterally only where the invalidity appears on the face of the record. Where the invalidity does not appear on the face of the record, the proper action is a direct attack. Probably the best source of an easy review of cases relating to collateral attack is found under that subject in Words and Phrases, Permanent Edition, in which innumerable holdings of cases are set out and the general holding seems to be that an attack based on matters outside the record is collateral.

It follows that we must determine whether the instant proceedings constitute a direct attack or are merely collateral. It is not claimed by appellants that the Petition to Vacate is disconnected and separate from the answer to the Court's Order to Show Cause. As a matter of fact, they are contained in the same instrument and it would seem reasonable to assume that the main purpose of appellants' proceeding was to prevent the revivor of the judgment. In fact, the prayer, although containing the request that the 1920 judgment be held for nought and vacated contains also the words "so that no future proceedings may be had upon or under said judgment." From the discussion of coun-

sel in the Supreme Court, it would seem that appellants are as much interested in their being no *present proceedings* as future proceedings. Be that as it may, the general rule seems to be as stated in 49 C.J.S. "Judgments" Paragraph 409:

"A proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such proceeding, whether it is a direct action on the judgment . . . or a proceeding to revive the judgment. . . ."

Cochrane vs. Parker, 12 Col. App. 169, 54 P. 1027; Selders vs. Boyle, 5 Kan. App. 451, 49 P. 320; Haupt vs. Simington, 27 Mon. 480, 71 P. 672; Tingwall vs. King Hill Irrigation District, 66 Ida. 76, 155 P. 2d 605. As is said in 31 Am. Jur. "Judgments" Paragraph 620:

"An attack upon a judgment by the defendant in an action on the judgment is generally regarded as a collateral attack. This is true where the action on the judgment is brought for the purpose of reviving it or of enforcing the lien thereof. The rule has been applied even where the defense sought to be interposed was that the judgment was void."

A portion of the succeeding paragraph and Paragraph 612, ante, discusses the character of an attack against a judgment on grounds which would render the judgment void ab initio and at first glance some of the cases cited indicate that an attack on grounds rendering the judgment void from the beginning is a direct attack. However, consultation of the cases indicates that such is not true except when the defect appears upon the face of the record. Probably one of the better annotations on the subject is found in L.R.A. 1918D, page 470, where, at page 472, it is stated inter alia:

" . . . Collateral attack might be defined as an attack on a judgment in any manner other than by action or proceeding whose very purpose is to impeach or overturn the judgment, or, stated affirmatively, a collateral at-

tack upon a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment . . ."

It seems to us logical and equitable that any party in an action who desires to avoid the binding force and effect of a judgment, which, on its face and on the face of the record, is valid and binding, should bring a direct attack on the judgment under the provisions of law applicable thereto, either in the same case or in a separate case in the same court. This is the law by the overwhelming weight of authority. Morover, such a holding allows a more orderly review of alleged improper actions of courts by the reviewing tribunal. We see no reason to depart from the rule.

The appellants in neither their brief nor their argument questioned the efficacy of a revivor of a personal judgment because of constructive service as opposed to personal service on the judgment debtor. The general rule on that point seems to be that in reviving a judgment against a non-resident defendant, the law is satisfied by publication. 49 C.J.S. "Judgments" Paragraph 543; 34 C.J. 667 "Judgments" Paragraph 1024; Shefts vs. Oklahoma Co., 192 Okl. 483, 137 P. 2d 589; Bank of Edwardsville vs. Raffaelle, 381 Ill. 486, 45 N.E. 2d 651, 144 A.L.R. 401, and annotation thereto at 403. Wyoming Compiled Statutes 1945, § 3-3902, referring to a revivor of judgments say inter alia:

"Service may be made by publication as in other cases," and § 3-2309 W.C.S. 1945 relating to revivor of actions has a similar provision and refers to publication. On the subject of personal service out of the state, § 3-1105 W.C.S. 1945 provides:

"In all cases where service may be made by publication under the provisions of this chapter, personal service of a copy of the summons and the petition in said action may be made out of the state. . . ."

A reasonable interpretation of these statutes indicates that there was no defect in the 1933 revivor because the service was constructive instead of personal since in the instant case there was personal service on the judgment debtors in the original action.

We next consider whether the limitations of § 3-2313 and § 3-2314 W.C.S. 1945 apply to § 3-3904 W.C.S. 1945, the statute under which the revivor proceedings herein are apparently brought. Numerous cases in a few jurisdictions have discussed

(a) The necessity of bringing a revivor action after the death of one of the judgment creditors in a joint judgment and such necessity where the surviving judgment creditor is a surviving partner, and

(b) The meaning of the words "in the same manner," contained in § 3-3904 W.C.S. 1945 as applies to statutes of limitation in the procedural statutes to which reference is made.

As to the necessity of a surviving judgment creditor bringing a revivor action, we find the cases well collected in 100 A.L.R. 814 ff, which is supplemented by 122 A.L.R. 752. These annotations show that there is a conflict of authority on the point and an analysis of the leading cases on the subject is apropos. One group holds that in instances wherein one of the persons having a joint judgment dies before execution is issued, upon suggestion of the death to the Court execution may issue in the name of the survivors *without revivor* since no new person has been made a party. This rule appears to have been followed in most of the states of the United States for many years, including the period during the 19th Century up to 1895 when the Supreme Court of Kansas in Ballinger vs. Hedhead, 1 Kan. App. 434, 40 P. 828, in passing on the validity of an execu-

tion sale initiated by one of two partners after the other had died, initiated a different ruling. The Kansas court in that case, after setting forth and analyzing the Kansas statutes, said that under those statutes there could be no proceeding respecting the assets of a deceased partner except by the authority and with the approval of the probate court and only then to the extent authorized and permitted by the law of the state. The reference of the court to statutes, besides revivor and partnership law, considered the provisions of their probate statute, Art. 2 Ch. 37, 1 Kan. G.S. 1889 page 839, similar to § 6-1905 W.C.S. 1945, in which the duties of an executor or administrator of the deceased member of a co-partnership and the obligations of the surviving partner were set out. It occurs to us that the court was very much influenced by the restrictions thus imposed by the Legislature.

The Redhead case has remained the law in Kansas to this time, although, as pointed out by respondents, the Kansas court in recent times has indicated that it is to some extent open-minded on the subject. Oklahoma, which has revivor statutes somewhat similar to those in Kansas, followed the Kansas view in the case of Drew vs. Thurlwell (1935), 173 Okla. 405, 48 P. 2d 1066, 100 A.L.R. 806, relating to two creditors of a joint judgment and held that no proceeding may be had in such a case until there has been revivor. However, in 1938 the Oklahoma court, in Gray vs. Marrs, 184 Okla. 595, 89 P. 2d 316, specifically overruled the Thurlwell case, based on the Redhead doctrine, as it related to partnerships. It is true that Justice Welch wrote a dissenting opinion in the Gray vs. Marrs case in which he adhered to the Redhead doctrine, but the majority opinion seems to us to be well reasoned and to indicate the proper view in cases relating to partnership situations. The court in the Gray case pointed out that the law of Oklahoma, Paragraph 11,660 of the O.S. 1931, at the

time applicable, provided that a partner authorized to act in liquidation may collect, compromise or release any debts due to the partnership, pay or compromise any claims against it and dispose of the partnership property and that under such a statute, authorizing a surviving partner to act in liquidation, no revivor was necessary because the surviving partner held the property in trust.

In Wyoming, under the law applicable prior to the adoption of the Uniform Partnership Act in 1917, the doctrine of the Ballinger-Redhead case might have merited consideration. However, the Uniform Partnership Act, recognized by this Court in Nick vs. John, 61 Wyo. 290, 157 P. 2d 563, (referring to the present § 61-610 W.C.S. 1945) and Larsen vs. Sjogren, 67 Wyo. 447, 226 P. 2d 177, (referring to § 61-602) has been adopted and alters the previous statute in certain specific matters, for example, § 61-602 states

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

and § 61-609 provides in part

"Unless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representatives of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; . . ."

Certainly, under a reasonable interpretation of these statutes, it is meant that the surviving partner does succeed to the rights of the deceased partner in trust for the purpose of liquidation. If that be true, no revivor of judgment is necessary in the case of the death of one of the two partners who are judgment creditors and a contrary holding would nullify the provisions of the Partnership Act to which reference is made.

In view of our opinion as indicated, it is unnecessary

to determine whether the words "in the same manner" in § 3-3904 refer to the limitations in Article 23 of Chapter 3, W.C.S. 1945. It follows from what has been said, that the death of W. P. Ricketts is of no importance herein; that it was not necessary to bring the action for revivor within one year after his death, but that the surviving partner was able to do so, without joining the heirs of Ricketts, within the limitation of twenty-one years as provided by § 3-3903 W.C.S. 1945, although the joinder of these heirs was harmless.

For the reasons above stated, the judgment of the lower court will be affirmed.

*Affirmed.*

BLUME, C.J., and RINER, J. concur.