IN THE MATTER OF JAMES FRANCIS TRAVIS, A MINOR, AND EDWARD JOHN TRAVIS, A MINOR,

*Appellants*

vs.

ESTATE OF JAMES V. TRAVIS, DECEASED; ELAINE TRAVIS: ELAINE TRAVIS, THE NATURAL GUARDIAN OF JAMES VIVAN TRAVIS, A MINOR,

*Appellees.*

(No. 2840; January 13, 1959; 334 Pac. (2d) 508).

330

For the appellants, the cause was submitted upon the brief and also oral argument of Maxwell E. Osborn of Cheyenne, Wyoming.

For the appellees, the cause was submitted upon the brief of Swainson & Swainson of Cheyenne, Wyoming, and oral argument by William A. Swainson.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

OPINION

Mr. Justice Parker delivered the opinion of the court.

James V. Travis, deceased, had been married three times, once to Mary Travis by whom a son, Edward John, was born; once to Betty Lou Travis by whom a son, James Francis, was born; and once to Elaine Travis. On July 30, 1952, Travis filed a suit for divorce in Laramie County against Elaine Travis, as a result of which a decree of divorce was issued on September 8 of that year. On February 28, 1955, he died intestate; and in the probate of his estate in Laramie County his two sons, James Francis and Edward John, were listed as his heirs. After the administrator had submitted "First and Final Accounting and Petition for Distribution," attorneys for Elaine Travis and James Vivan Travis on May 25, 1956, filed "Objections and Exceptions to First and Final Accounting and Petition for Distribution," alleging that Elaine Travis was the widow of deceased; that James Vivan

Travis was born to Elaine and deceased on May 18, 1955; and that Elaine had filed a petition (October 12, 1955) to vacate the divorce judgment, which petition was still pending and undetermined. Thereupon the probate court after appointing a guardian ad litem for intestate's sons, James Francis and Edward John, heard the objections and exceptions, entered a finding that the decree of divorce was void and invalid, vacated and set aside said decree, and adjudged that the heirs at law of deceased were Elaine Travis, the surviving widow, James Francis, Edward John, and James Vivan, sons of deceased. Appellants contend that the trial court erred in purporting to overturn the divorce and permitting Elaine to testify as to her relationship with the deceased—thereby establishing herself as the surviving widow and her son as the posthumous heir of James V. Travis.

At the hearing, Elaine was asked by counsel various questions about her conduct and conversation with deceased during his lifetime. Both the administrator and the guardian ad litem objected to the questions on the ground that they were a violation of § 3-2603, W.C.S.1945, commonly known as the dead man's statute. The court overruled the objections, saying among other things:

"It is the view of the court here that this is by and large a hearing to determine heirship.* * *

"Now in this kind of a hearing the court does not feel that this so-called exclusionary statute has application or should be given application. The court should not be precluded from having as full an inquiry here and as necessary, in the opinion of the court to that hearing—to such hearing and that that statute be not applied and exclude this witness here. In reality it may be said that it is a contest between an administrator of an estate and two other individuals claimed

heirs. It is that, but I don't believe it is in the contemplation of the law that that statute should preclude an inquiry such as is about to be made here and which objector is undertaking to make now through the use of this witness as his first witness. So I am going to overrule this objection on that theory, that the court should not be controlled and limited in its inquiry in a matter of this type, an estate matter of this type where heirship has to be found—should not be excluded from hearing evidence such as the evidence of this wife here and I hold myself to it."

Three questions are necessary for determination of this appeal: (1) Could the probate court properly determine the decree of divorce entered by the district court of the same district to be void and invalid, and could the court vacate and set it aside *collaterally*? (2) Was testimony by Elaine Travis of her acts and conversations with the deceased at a time prior to his death admissible in the light of the provisions of § 3-2603, which under certain circumstances prevents testimony where the adverse party is an administrator or heir? (3) Was the probate decree purporting to void, invalidate, and vacate the divorce contrary to § 3-3802, W.C.S.1945 (1957 Cum. Pocket Supp.), a statute which relates to the time during which a judgment may be reopened?

On the first question it may be well to consider what we mean by "collateral attack." In Hume v. Ricketts, 69 Wyo. 222, 240 P.2d 881, 883, we quoted with approval a definition from Annotation, L.R.A. 1918D, 470, 472:

" '* * * Collateral attack might be defined as an attack on a judgment in any manner other than by action or proceeding whose very purpose is to impeach or overturn the judgment, or, stated affirmatively, a collateral attack upon a judgment is an attack made by or in an action or proceeding that has an inde-

pendent purpose other than impeaching or overturning the judgment * * *.' "

See also Ballentine, Law Dictionary, 2d ed., p. 230; Black's Law Dictionary, 3d ed., p. 348; and 7A Words and Phrases, perm.ed. 1952, pp. 141, 142.

It is clear beyond question that the attack on the divorce judgment was collateral, the divorce having been granted in the district court and the decree establishing heirship which purported to vacate the divorce decree having emanated from the probate court. In fact, the point is assumed rather than argued by appellees who justify the attack upon the decree by pointing out its invalidity for want of jurisdiction. In any event, the rule is well established that a judgment is not subject to collateral attack where the court had jurisdiction of the subject matter and of the parties. Closson v. Closson, 30 Wyo. 1, 215 P. 485, 29 A.L.R. 1371; 30A Am.Jur. Judgments § 844; 49 C.J.S. Judgments § 401.

Appellants argue that the divorce decree was attacked collaterally in violation of law. Appellees respond that a judgment affirmatively appearing on the face of the record to be void may be attacked collaterally or otherwise and cite Boulter v. Cook, 32 Wyo. 461, 234 P. 1101, 236 P. 245; Bank of Commerce v. Williams, 52 Wyo. 1, 69 P.2d 525, 110 A.L.R. 1463; and Wunnicke v. Leith, 61 Wyo. 191, 157 P.2d 274. We must decide then whether or not the record on its face shows the divorce decree to be void. Unfortunately, appellees fail to discuss in any detail the reasons why they claim this decree is void *on the face of the record*; and the authorities submitted do not deal with situations similar to the instant problem.

As was well pointed out by Chief Justice Blume in L. C. Jones Trucking Co. v. Superior Oil Co., 68 Wyo. 384, 234 P.2d 802, 809, the authorities are not entirely harmonious on record facts which sufficiently question service of process to permit collateral attack. As there indicated, many authorities hold that a statement of jurisdiction in the judgment will preclude a collateral attack on jurisdictional grounds although some courts hold impeachment under these conditions to be proper if there is a positive showing to the contrary by the remainder of the record. Before reviewing the divorce case, we should take cognizance of basic reasons why courts should scrutinize incidental attacks against judgments.

Random questioning of court decrees by other courts which stand on a similar or lesser footing is a practice which affects public policy and convenience, especially in regard to the integrity of established rights acquired on the faith of judicial proceedings. See generally the discussion and citations at 30A Am.Jur. Judgments § 845. 1 Freeman on Judgments, 5th ed., pp. 602, 603, states:

"* * * That the formal pronouncements of legal tribunals upon causes submitted to them should enjoy every possible degree of finality and conclusiveness would seem to be a necessary predicate to the proper functioning of the courts themselves. To permit their decisions to be evaded or disregarded for insufficient cause or in modes not sanctioned by law would tend to disrupt the administration of justice and bring courts into disrepute. Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. Litigants, of course, must be provided with some remedy to gain relief from an erroneous or unwarranted judgment. And in recognition of such necessity, the law has es-

tablished appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. If he so wishes, he may seek relief from the judgment by some timely move in the court rendering it, or have recourse to some authorized mode of review by an appellate tribunal, or under certain circumstances procure a setting aside or annulment of the judgment by a court of equity. If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character * * *."

We therefore look now to the proceedings in the divorce case. The decree therein among other things recited, "the court finds * * * it has jurisdiction of the parties and the subject matter." Such finding made by the court, presumably after careful examination of the file and serious consideration of the single matter then before it, would seem to constitute a determination assailable only in a direct proceeding and for convincing reasons. We cannot assume that a trial court has made a specific finding of jurisdiction which was unwarranted and without basis. Accordingly, we examine file 38-166 in the District Court of Laramie County, James V. Travis, Plaintiff, v. Elaine Travis, Defendant. This was marked by the reporter as Defendant's Exhibit B, and although not specifically offered, was permitted by the court to "go in." It contains the petition, affidavit for service by publication, precipe for summons, summons with return, affidavit of publication with notice, and decree of divorce, all dated in 1952, and a series of papers filed between October 12, 1955, and October 1, 1957, relating to a requested vacation of the divorce judgment. Several facts regarding these later filings are significant. The ultimate filing is a subpoena to the James V. Travis attorney directing him to bring with him "his office notes and records" in the captioned case. Next to the

precipe for subpoena of the attorney, filed September 12, 1957, is an unopened envelope apparently containing the publication from the clerk of court, addressed to Elaine Travis in Denver, and returned to sender with the notation, "Moved No Order." There apparently was no hearing on the second amended petition to vacate judgment since a demurrer was filed thereafter and no order is shown. These matters, unexplained by testimony, can scarcely be said to present a clear picture upon which a solemn judgment could be properly vacated by a summary pronouncement. Rather they bring to mind various questions. Why was the attorney subpoenaed? What would his notes and records have shown? Did he have in his possession the envelope addressed to Elaine Travis, and if so, what was its status? Was it a part of the divorce case, a part of the proceedings which followed the divorce case, or not properly a part of either? Considering the clearly established rule that in the absence of a showing to the contrary a public officer is presumed to have performed a duty imposed upon him by law,[1] are we to say that the clerk of court failed to send the publication by registered mail and that such failure was patent on the record and vitiated the service? What weight are we to give to the fact that the trial court twice sustained demurrers on petitions to vacate the judgment and at the time of the hearing in the probate court had not decided a third demurrer to such a petition? Certainly, the state of the file is so confused that the decree can scarcely be said to be void *on the face of the record.*

We cannot assume that the clerk of court failed to send the copy of the publication to Elaine Travis by

---

[1]Rim Group v. Mountain Mesa Uranium Corporation, Wyo. 321 P. 2d 229, 323 P.2d 939.

registered mail, nor can we presume that even if he did the failure would vitiate the service. Even so, there is an additional matter which merits some attention. By the amendment of subsection 10 of § 3-1101, what did the legislature intend when it inserted the provision that the clerk shall mail "by registered mail with return receipt requested"? These words were added by § 1, c 77, S. L. of Wyoming, 1947, as an amendment of subsection 10 of § 3-1101. The entire section dealt with constructive service in various types of cases, whereas subsection 10, the one purporting to be amended, dealt with publication relating to water and water rights. The provisions relating to water and water rights were *not* altered in any respect, instead the last unnumbered paragraph which dealt with "any case in which service by publication is made under the provisions of this section" inserted the only change, i.e., that relating to the registered mail. Fundamentally the handling of a general subject in a bill purporting to change only one subsection may raise a constitutional question of violation of Art. 3, § 24, Constitution of Wyoming.[2] We do not pass on this point since it has not been raised by the parties; but aside from any constitutional question, there is of course the intent of the legislature. What was meant by the amendment? Was it intended that a failure of the clerk to send by registered mail should vitiate the service, and was this to be applied generally and not

---

[2]"No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

specifically to subsection 10 which dealt with water and water rights? Are we justified in so holding without a direct statement in the amendment, without expression in the legislative history, and without legal precedent offered by counsel for our guidance?

We turn then to a consideration of § 3-2603 to determine its application in the present situation. Its provisions are fairly broad, wherein it states, "A party shall not testify where the adverse party is * * * an * * * administrator, or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person." Appellants urge that the statute should have applied in the present case, and under the circumstances disclosed by the record, we are inclined to agree. Appellees insist that no resistance was filed to their objections and therefore that no issue was joined between the parties. Authority for their position is lacking in the brief and argument, and their reference to Collins v. Collins, 14 Ill.2d 178, 151 N.E.2d 813, is unconvincing since the case does not turn upon an interpretation of a dead man's statute. The statutory prohibition would preclude a former wife from testifying against the heirs or representative of her deceased former husband unless there were unusual circumstances which justify an exception. No exception being shown in the instant case, the testimony of Elaine Travis as to her conversations and acts with the deceased was incompetent and prejudicial to appellants.

We advert then to appellants' argument that the trial court erred in setting aside a decree more than three years after the party against whom it was rendered had received actual notice thereof, all in violation of § 3-3802. The petition to vacate the divorce decree did not purport to be brought under that section, and the argument is therefore not well taken.

Should the matter be pursued further, it may develop that the lapse of time has foreclosed the remedy provided by the statute, but this will be a question for the court having jurisdiction when the problem arises.

Although the decree of divorce in the case of James V. Travis v. Elaine Travis may conceivably be challenged at a later time, it must under the present state of the record stand as valid. Accordingly, the case is reversed and remanded for proper action consistent with the views herein expressed.

Reversed and remanded.