# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 99

**OCTOBER TERM, A.D. 2016**

**October 17, 2016**

IN THE INTEREST OF SO, a Minor Child:

PM and JM,

Appellants
(Respondents),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner),

and

FH and RH,

Appellees
(Respondents).

S-16-0071

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellants:*

> Timothy C. Cotton, CottonLegal, Casper, Wyoming.

*Representing Appellee, State of Wyoming:*

> Peter K. Michael, Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General.  Argument by Ms. Kucera.

*Representing Appellees, FH and RH:*

*No appearance.*

*Guardian Ad Litem:*

*Dan S. Wilde, Deputy Director, Aaron S. Hockman, Permanency Attorney, and Christopher W. Goetz, Student Intern, Wyoming Guardian Ad Litem Program.*

**Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellants JM and PM are the grandmother and step-grandfather of SO.  SO is currently in the legal custody of the Wyoming Department of Family Services, and has been in the physical care of Foster Parents since three days after her birth on February 4, 2013.  Grandparents filed a motion seeking to transfer placement of SO from Foster Parents to Grandparents.  The juvenile court denied the motion and Grandparents challenge that decision in this appeal.  We affirm.

## ISSUE

[¶2]    The issue in this case is whether the juvenile court abused its discretion when it denied the "Motion for Placement of Minor Child with Grandparents."

## FACTS

[¶3]    At the time of her birth, SO's Mother was in pretrial custody at the Natrona County jail in Casper, Wyoming.  Wyoming's Department of Family Services took the child into protective custody.  Because Mother's four older children were already in DFS custody in Sheridan, Wyoming, DFS relocated SO to Sheridan, where she was placed in Foster Parents' care on February 7, 2013.  On February 21, 2013, Mother was released from jail on bond and moved to Sheridan.  On March 12, 2013, DFS filed a petition alleging that SO was a neglected child and that Mother was unable to provide proper care for her.  During the initial hearing, Mother admitted the allegations, and the juvenile court adjudicated SO as a neglected child.  The court ordered that SO would remain in the legal custody of DFS and in the physical custody of Foster Parents.

[¶4]    In April of 2013, DFS sent a "Notice to Relative" form to Grandparents and other relatives of SO, informing them that SO had been removed from Mother's care and was in the custody of the State.  The form indicated to Grandparents that, "[a]s a relative, you may be considered for short or long term placement of this child, if you agree, and your home is considered an appropriate placement option."  Grandparents returned the form to DFS as requested, indicating they were "interested in making contact with this child and being a positive support in this child's life."  They did not check the box indicating they were "interested in being considered as a possible placement resource for this child."

[¶5]    In the meantime, Mother's criminal proceedings continued.  Ultimately, Mother pled guilty to a charge of possession of a deadly weapon with unlawful intent, and was sentenced to three to five years in prison.  The sentence was suspended, and Mother was placed on probation with a requirement that she complete an in-patient substance abuse treatment program.  She entered a treatment program on June 20, 2013.  Mother did not complete the program, however, and was discharged from the treatment facility on October 18, 2013.  As a consequence, her probation was revoked and on November 7,

1

2013, Mother was ordered to complete her prison sentence.

[¶6]    After Mother went to prison, Grandparents, for the first time, sought to have SO placed with them.  Their request was discussed at a November 21, 2013, meeting of the Multidisciplinary Team.  A majority of MDT members recommended that SO should remain in the care of Foster Parents, and also recommended termination of Mother's parental rights.

[¶7]    Following this meeting, Grandparents sought permission to intervene in the case, and that petition was granted.  Grandparents also petitioned the court to place SO in their care and applied with DFS to become SO's foster parents.  Acting on this application, DFS completed a home study which recommended against placing SO with Grandparents.  As a result of this study, DFS denied Grandparents' application to become foster parents.  In response, Grandparents hired an independent expert to perform a second home study.  That study concluded that Grandparents were an appropriate placement option for SO.

[¶8]    At a hearing in June of 2014, the juvenile court accepted the MDT's recommendation to change the permanency plan to adoption.  It also ordered that SO remain in the physical custody of Foster Parents.  In a separate proceeding in district court, DFS petitioned to terminate Mother's parental rights.  Following a trial, the district court granted that petition.  Mother appealed, and we affirmed the district court's decision. *SSO v. State, Dep't of Family Servs.*, 2015 WY 124, 357 P.3d 754, 755 (Wyo. 2015).

[¶9]    A subsequent permanency hearing was held in July of 2015.  During that hearing, the juvenile court also heard Grandparents' motion asking that SO be removed from Foster Parents and placed with them.  In its order, entered November 6, 2015, the juvenile court confirmed a permanency plan of adoption, and ordered that SO should continue to be placed with Foster Parents.  This order, in effect, also denied Grandparents' motion to place SO with them.  Grandparents subsequently appealed the denial of their motion to change placement.

## *STANDARD OF REVIEW*

[¶10] The guiding principle of Wyoming's Child Protection Act, as stated by the legislature, is that a "child's health, safety and welfare shall be of paramount concern in implementing and enforcing this article."  Wyo. Stat. Ann. § 14-3-201 (LexisNexis 2015).  Thus, at its core, a juvenile court's decision regarding placement of a child must be based on the child's best interests.  We review such a decision for abuse of discretion.

> In cases where the trial court is required to make a determination that is in the "best interest of the child," we

2

have regularly applied an abuse of discretion standard of review. This standard applies in adoption cases:

> The district court has the power and discretion to grant an adoption without parental consent, provided all the statutory elements are satisfied. *In the Matter of the Adoption of SMR, MVC v. MB*, 982 P.2d 1246, 1248 (Wyo. 1999). This Court reviews adoption decrees by applying the abuse of discretion standard. *In the Matter of Adoption of TLC, TOC v. TND*, 2002 WY 76, ¶ 9, 46 P.3d 863, 867-68 (Wyo. 2002).

> *TF v. Dep't of Family Serv. (In re CF)*, 2005 WY 118, ¶ 10, 120 P.3d 992, 998 (Wyo. 2005). It also applies in child custody cases: "We have stated before that '[c]ustody, visitation, child support, and alimony are all committed to the sound discretion of the district court.'" *Blakely v. Blakely*, 2009 WY 127, ¶ 6, 218 P.3d 253, 254 (Wyo. 2009). The fundamental goal in adoption and child custody cases is to arrive at a result that is in the best interests of the child. Similarly, the "best interests of the children" are at the heart of the permanency decision in this case. Accordingly, we will apply the abuse of discretion standard in reviewing the district court's decision.

*JO v. State, Dep't of Family Servs. (In the Interest of RE)*, 2011 WY 170, ¶ 10, 267 P.3d 1092, 1096 (Wyo. 2011). *See also KC v. State (In the Interest of GC)*, 2015 WY 73, ¶ 18, 351 P.3d 236, 242 (Wyo. 2015).

[¶11]  "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *GWJ v. MH (In re BGH)*, 930 P.2d 371, 377-78 (Wyo. 1996) (quoting *Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980)). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." *GWJ*, 930 P.2d at 377.

> Assessment of the circumstances of this case, in the context of alleged abuse of discretion, is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party.

3

*Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo. 1995) (citing *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994)).

## *DISCUSSION*

[¶12] The juvenile court held a permanency hearing in SO's case on July 28, 2015. At this same hearing, it also considered Grandparents' motion to place SO with them. The juvenile court heard testimony from the DFS caseworker, a child psychologist, and Grandmother. It also considered voluminous information in the record, including periodic reports and recommendations from DFS and from the MDT. After considering the evidence, the juvenile court ruled that "the permanency plan of adoption is in the best interest of the child," and that SO should continue to be placed with Foster Parents. Accordingly, it denied Grandparents' motion to place SO with them. The question before us is whether the court abused its discretion when it made that choice.

[¶13] In our review, we consider the evidence favorable to DFS and Foster Parents, and give them the benefit of every favorable inference fairly drawn from that evidence. We leave out of consideration conflicting evidence presented by Grandparents. *Basolo*, 907 P.2d at 353. Applying this standard of review, we find that the evidence is more than sufficient to demonstrate that the juvenile court did not make an unreasonable decision.

[¶14] Grandparents do not identify or suggest that there were any inadequacies in the care provided by Foster Parents. Their contention of error appears to be based solely upon their familial relationship. In short, they contend that the child should be placed with them simply because they are SO's grandparents. We disagree.

[¶15] We begin by noting that SO had been in Foster Parents' care since three days after her birth, and at the time of the permanency hearing she had been in their care approximately two and a half years. By all accounts, she was thriving in that situation. Testimony indicated that changing placement could be detrimental to SO. The child psychologist, though not familiar with SO's individual case, provided the juvenile court with general information about early childhood development, attachment, bonding, and the effects of changing placement. She indicated that a permanent change in placement affects a child "just like a death, so if they no longer have the caregiver in their life, they've lost that person." She testified that two-year-olds may react with grief, "significant regression in their skills," increased anxiety, and fear of abandonment. This testimony echoed concerns expressed by the DFS caseworker that, given the attachments formed between SO and Foster Parents, removing her from their care would be harmful to SO.

[¶16] Although the home study commissioned by Grandparents supported placement of SO with them, there was also evidence in the record that raised concerns about

Grandparents' ability to provide adequate care for SO. The DFS home study concluded that placement of SO with Grandparents was inappropriate, and listed several factors contributing to that conclusion. As previously mentioned, Mother's four older children were in DFS custody when SO was born. Two of those children had been placed with Grandparents. After keeping the children for just over a year, Grandparents indicated they were "tired," "frustrated" and "burnt out," and the children were placed elsewhere. While those children were in the care of Grandparents, there were concerns that the children had not been taken to medical, dental, and vision appointments. The DFS employee who conducted the home study also did "not get the sense" that Grandparents were "prepared to parent [SO] long term." Instead, the DFS employee believed, Grandparents were motivated by a desire to reunite SO with Mother in the future, even though Mother's parental rights to SO had been terminated. In addition, there was evidence that Mother left Grandparents' care when she was eleven years old to live with her biological father. Mother's sister left Grandparents' care when she was twelve to live with her paternal grandmother.

[¶17] Grandparents do not contend that Foster Parents have failed to provide adequate care for SO. Rather, they assert that Wyoming's "compelling preference" for placement with family tips the balance in their favor. The juvenile court was aware of that preference, but correctly concluded that the best interests of SO were paramount. As it explained in a subsequent order:

> [A]lthough there is a 'compelling preference' that it is best to place a child with family, this is not an absolute rule, and the Court must consider the best interests of each child when making a placement decision. In this case family placement was not an option when the child was taken into custody. When it became an option, DFS considered the factors that it is required to evaluate under its rules and regulations, and it determined that [Grandparents] were not a suitable placement or adoptive home. When making the placement determination, the Court agreed that continued placement with the foster family was in the child's best interests.

[¶18] The juvenile court's reasoning is in accord with the statute governing permanency hearings, which provides that, "At the permanency hearing, the court shall determine whether the permanency plan is in the best interest of the child." Wyo. Stat. Ann. § 14-3-431(k). It is consistent with the Child Protection Act's provision that a "child's health, safety and welfare shall be of paramount concern." Wyo. Stat. Ann. § 14-3-201. We acknowledge, as did the juvenile court, that there is a preference for family placements in Wyoming. *TF v. Department of Family Serv. (In re CF)*, 2005 WY 118, ¶ 26, 120 P.3d 992, 1002 (Wyo. 2005) ("We agree that, in general, preference should be given to family placements."). However, the preference for family placement should not prevail over the

"paramount concern" for the best interests of the child.

[¶19]  The juvenile court determined that it was in the best interests of SO to remain in the custody of Foster Parents.  It was within the court's discretion to make this determination and, in turn, to deny Grandparents' motion to place SO with them.  The evidence available to the juvenile court, when viewed in a light most favorable to DFS and Foster Parents, demonstrates the reasonableness of this decision.  The juvenile court did not abuse its discretion, and we affirm.