2017 WY 142

**In the MATTER OF the ADOPTION OF SSO**

**RB, Appellant (Respondent),**

v.

**State of Wyoming, Department of Family Services, and FH and RH, Appellees (Petitioners).**

S-17-0058
S-17-0059

Supreme Court of Wyoming.

December 5, 2017

See also 382 P.3d 51.

Representing Appellant: Timothy C. Cotton, CottonLegal, Casper Wyoming.

Representing Appellee State of Wyoming, Department of Family Services: Peter K. Michael, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Jill E.

Kucera, Senior Assistant Attorney General. Argument by Ms. Kucera.

Representing Appellees FH and RH: Anthony T. Wendtland and Debra J. Wendtland, Wendtland & Wendtland, LLP, Sheridan. Wyoming. Argument by Mr. Wendtland.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] RB, the biological father of SSO, entered an appearance to contest adoption proceedings and SSO's foster parents, the petitioners for adoption, moved to strike his entry of appearance and objection to the adoption. The adoption court determined that RB's parental rights had previously been terminated, granted the foster parents' motion to strike, and granted their petition for adoption. RB appeals and we affirm.

## ISSUE

[¶2] The issue is whether RB has standing to challenge the adoption of SSO.

## FACTS

[¶3] During her short life, SSO has been the subject of three independent proceedings and two previous appeals to this Court: the Juvenile Case (Fourth Judicial District Juvenile Case No. JV-2013-9, *In Interest of SO*, 2016 WY 99, 382 P.3d 51 (Wyo. 2016) (affirming juvenile court's order denying maternal grandparents' motion seeking to transfer placement of SSO from foster parents to grandparents)), the Termination of Parental Rights Case (the Termination Case) (Fourth Judicial District Case No. CV-2014-324, *In re SSO*, 2015 WY 124, 357 P.3d 754 (Wyo. 2015) (affirming order terminating parental rights of Mother)), and the Adoption Case (Fourth Judicial District Case No. AD-2015-18, petition for writ of review denied, S-16-0087, April 26, 2016). The Adoption Case is the subject of this appeal. The underlying facts are set forth in *In Interest of SO*, 2016 WY 99, ¶¶ 3-9, 382 P.3d at 52-53, and will be only briefly summarized here.

[¶4] SSO has been in foster care since February 7, 2013, three days after her birth.

On September 17, 2014, after efforts of the Department of Family Services (the Department) to reunify SSO with Mother failed, the Department filed its petition seeking to terminate the parental rights of Mother and then unknown father, initiating the Termination Case. Mother had previously identified four potential fathers, all of whom were genetically tested and determined not to be the father of SSO. The Department personally served Mother its petition to terminate and served the unknown father by publication. A trial was scheduled for February 10-13, 2015. Shortly before trial, Mother identified a fifth potential father, RB, appellant here. He was not genetically tested prior to the trial. On March 5, 2015, and while the court's decision on the termination was pending, the Department provided notice to the court that RB had been determined to be the biological father of SSO. On March 13, 2015, the district court entered an order terminating both Mother's and "Unknown Father's" parental rights. Mother appealed the order terminating parental rights, but RB did not. (In fact, RB relinquished his parental rights to SSO "specifically for the minor child to be adopted by [her maternal grandparents]" on August 1, 2015, and he filed notice of that relinquishment in the Juvenile Case.) This Court affirmed the termination of parental rights order on Mother's appeal. *In re SSO*, 2015 WY 124, 357 P.3d 754.

[¶5] Shortly thereafter, on November 30, 2015, SSO's foster parents, FH and RH, filed a petition for decree of adoption, initiating the Adoption Case. The maternal grandparents attempted to intervene in the Adoption Case, but on March 11, 2016, their motion was denied. The grandparents filed a petition for writ of review with this Court, which was denied on April 26, 2016. On April 28, 2016, RB entered an appearance in the Adoption Case and objected to the foster parents' adoption of SSO. The foster parents filed a motion to strike RB's entry of appearance and objection to the adoption, arguing that RB's parental rights had been terminated and, therefore, he had no standing to object to the adoption. In response, RB argued that he had not properly been served in the Termination Case, that his rights had, therefore,

not effectively been terminated, and, consequently, that he had standing to appear in the Adoption Case. On May 23, 2016, the district court stayed the adoption proceedings for 120 days to allow RB to challenge the termination order "in the proper forum" and to give him "time to pursue other judicial remedies that may be available."

[¶6] RB did not challenge the Order Terminating Parental Rights during the 120-day stay. Accordingly, the district court determined that his rights had been terminated and he had no standing to enter an appearance in the Adoption Case or to challenge the adoption, and it granted the foster parents' motion to strike his entry of appearance and objection to adoption. The district court entered a Final Decree of Adoption, granting SSO's foster parents' petition. RB filed separate appeals, of the order granting the foster parents' motion to strike his entry of appearance and objection to SSO's adoption, and of the adoption order, which are consolidated here.[1]

## DISCUSSION

### Does RB have standing to challenge the adoption of SSO?

[¶7] Adoption proceedings are governed by Wyo. Stat. Ann. §§ 1-22-101 through 203, while Wyo. Stat. Ann. §§ 14-2-308 through 319 regulate terminations of parental rights. Termination and adoption proceedings are separate proceedings brought under different dockets. RB did not attempt to challenge the termination order in the Termination Case directly. Instead, he sought to appear in the Adoption Case and object to the adoption, asserting there that he had not properly been served in the Termination Case. The adoption court denied his motion, concluding that because his rights had been terminated in the Termination Case, he had no standing.

[¶8] RB claims that the district court in the Adoption Case erred when it held that

his parental rights were severed in the Termination Case. He contends that because he was not properly served in the Termination Case, his rights were not terminated. He also argues that since he was incorrectly identified as the "unknown father" instead of the "putative father," the termination order does not terminate his rights. The Department and the foster parents respond that RB's parental rights were terminated in the Termination Case, and that he cannot collaterally attack the termination order in the Adoption Case. The determination of RB's ability to collaterally attack the termination order in the adoption proceedings presents a question of law which we review de novo. *In re Estate & Guardianship of Andrews*, 2002 WY 17, ¶ 15, 39 P.3d 1021, 1025-26 (Wyo. 2002).

[¶9] We have defined a collateral attack as

an attack on a judgment in any manner other than by action or proceeding whose very purpose is to impeach or overturn the judgment, or, stated affirmatively, a collateral attack upon a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment.

*Travis v. Estate of Travis*, 79 Wyo. 329, 335-36, 334 P.2d 508, 510 (Wyo. 1959) (citations omitted). "As a general rule, collateral attacks on judgments are not allowed." *Moore v. State*, 2009 WY 108, ¶ 12, 215 P.3d 271, 274 (Wyo. 2009) (internal citations omitted). However, a "judgment rendered by a court without jurisdiction is void and subject to collateral attack." *Id.* (citing *Rogers v. City of Cheyenne*, 747 P.2d 1137, 1139 (Wyo. 1987)).

Jurisdiction of the court over the parties is an essential to the validity of any judgment and a personal judgment rendered without such jurisdiction is void. However, the judgment is presumed to be valid and the presumption in favor of jurisdiction extends to jurisdiction of the parties. By the general rule, a collateral attack may not be made upon a judgment where the absence

---

1. The order striking his appearance and objection to the adoption became final upon the entry of the Final Decree of Adoption. *In re Adoption of JRH*, 2006 WY 89, ¶ 11, 138 P.3d 683, 686 (Wyo. 2006); *Matter of Adoption of CJH*, 778 P.2d 124,

125 (Wyo. 1989). The two appeals here would have properly been brought in one appeal, from the Final Decree of Adoption. *In re Adoption of JRH*, ¶ 11, 138 P.3d at 686.

of jurisdiction over the parties does not appear upon the record.... [A] void judgment, such as one wherein the court lacks jurisdiction over the parties, can be attacked collaterally only where the invalidity appears on the face of the record. Where the invalidity does not appear on the face of the record, the proper action is a direct attack.

*In re Estate & Guardianship of Andrews*, 2002 WY 17, ¶ 19, 39 P.3d at 1026 (quoting *Hume v. Ricketts*, 69 Wyo. 222, 228-29, 240 P.2d 881, 882-83 (Wyo. 1952)) (citations omitted). "[P]roper 'service of process is a necessary condition precedent to the acquisition of personal jurisdiction ....'" *Hoke v. Motel 6 Jackson*, 2006 WY 38, ¶ 22, 131 P.3d 369, 381 (Wyo. 2006) (internal citation omitted).

[¶10] In *Travis*, a probate action, the decedent's third wife and her son challenged the divorce decree terminating her marriage with the decedent. *Travis*, 79 Wyo. at 333-35, 334 P.2d at 509-10. They argued that the divorce decree had not properly been served and was therefore invalid. *Id.* at 334, 334 P.2d at 509. The probate court agreed, and entered judgment in favor of the former wife and son and adverse to Travis' two older sons from two prior marriages. *Id.* On appeal, the two older sons argued that the probate court improperly allowed a collateral attack upon the divorce decree. *Id.* at 335-36, 334 P.2d at 510. We examined whether the record on its face was sufficient to overcome the presumption of jurisdiction and concluded it was not. *Id.* We reversed, holding that the challenge to the divorce decree based upon inadequate service was an improper collateral attack that could not be raised in the probate action. *Id.* at 341-42, 334 P.2d at 512-13.

[¶11] Similarly, in this appeal of the Adoption Case, RB argues that he was improperly served in the Termination Case and therefore he had the right to appear in the Adoption Case. That argument is a collateral attack upon the order terminating parental rights. Thus, our review is limited both by

legal standard—whether an absence of jurisdiction appears on the face of the record—and by the fact that, because this is not a direct appeal, we do not have the full record in the Termination Case before us. Nothing in the record we do have suggests that service by publication upon an unknown father was not proper at the time that it was completed. *See* Wyo. Stat. Ann. § 14-2-313 (LexisNexis 2017) (providing for service by publication to unknown parties to terminations of parental rights action), W.R.C.P. 4(e)(10) & 4(h) (2016 ed.). The court in the Termination Case therefore obtained jurisdiction over the parties. RB does not contend otherwise. He does not challenge the validity of the service by publication, and he does not dispute that, at the time of service, the father was unknown. RB argues instead that the district court lost jurisdiction over him when, prior to the entry of the termination order, he went from being an unknown father to either a "known father" or a "putative father."[2] Thus, he contends, the order terminating the rights of an unknown father does not apply to him.

[¶12] To determine whether RB may collaterally attack the termination order in the Adoption Case, we examine whether the record reveals an absence of jurisdiction on its face. *In re Estate & Guardianship of Andrews*, 2002 WY 17, ¶ 21, 39 P.3d at 1027; *Travis*, 79 Wyo. at 335, 334 P.2d at 510. As discussed above, RB does not dispute that the district court obtained jurisdiction over the parties after service by publication on the unknown father. We find nothing on the face of the termination order or the record available to us to indicate that the district court subsequently lost jurisdiction. On its face, the record before us does not reveal an absence of jurisdiction. Thus, RB's collateral attack on the termination order cannot be maintained in this Adoption Case. RB's remedy, if he had one, was in the Termination Case, which he failed to timely appeal or to challenge when he was given a second chance

---

2. RB relies on the definition of "putative father" found in the adoption statutes, Wyo. Stat. Ann. § 1-22-101(a)(iv) (LexisNexis 2017), of questionable application to termination proceedings. Further, RB's assertion of "putative father" status is at best disingenuous. RB never registered with the Putative Father Registry, as permitted by Wyo. Stat. Ann. § 1-22-117 (LexisNexis 2017), and he relinquished his rights to SSO's maternal grandparents on August 1, 2015.

with the 120-day stay in the Adoption Case.[3]

[¶13] Having determined that RB cannot succeed in a collateral attack on the termination order, we turn to the question of whether he had standing to appear in the Adoption Case. RB claims that the district court failed to strictly construe Wyoming's adoption statutes in violation of his constitutional rights.[4] The Department and the foster parents argue that RB lacks standing to appeal the decree of adoption. We agree. The existence of standing is a legal question subject to de novo review. *Northern Laramie Range Found. v. Converse Cty. Bd. of Cty. Comm'rs*, 2012 WY 158, ¶ 22, 290 P.3d 1063, 1073 (Wyo. 2012). Standing requires "a legally protectible and tangible interest [to be] at stake in the litigation." *In re JW*, 2010 WY 28, ¶ 17, 226 P.3d 873, 877 (Wyo. 2010) (citation omitted).

[¶14] We have held that a parent who "is on the brink of having her parental rights terminated, but [whose rights have not been terminated] yet," has standing to appeal an order in a neglect matter placing her children in foster care. *In re JW*, 2010 WY 28, ¶ 18, 226 P.3d at 878. However, once parental rights have been terminated, a parent no longer has a legally protectible or tangible interest at stake in an adoption proceeding. Wyoming's adoption statutes provide that adoption is permitted without consent of a parent if the court finds that "the nonconsenting parent or parents have ... [b]een judicially deprived of parental rights of the child for any reason." Wyo. Stat. Ann. § 1-22-110(a)(ii) (LexisNexis 2017). Additionally, Wyoming's termination of parental rights statutes establish that one of the effects of an order of termination is that "[t]he parent whose parent-child legal relationship has been terminated is not thereafter entitled to notice of the proceedings for the adoption of the child, nor has he any right to object to the adoption or otherwise participate in the adoption proceedings." Wyo. Stat. Ann. § 14-2-317(b) (LexisNexis 2017). RB's parental rights have been terminated and, as a result, he has no legally protectable interest at stake and cannot object to or otherwise participate in the adoption.

## CONCLUSION

[¶15] RB's challenge to the service in the termination of parental rights action is an improper collateral attack on the Termination Case and cannot be raised in the Adoption Case now before the Court. The district court properly struck RB's appearance in the adoption action. Because RB's parental rights have been terminated, he has no standing to object to or otherwise participate in the adoption. Affirmed.

---

3. The Department argues that "[b]y failing to take the opportunity provided by the adoption court to challenge the termination order, RB has waived his right to challenge the order now." Having found that a challenge to the termination order is an improper collateral attack, we do not address the waiver argument. However, we note that "the general rule [is] that it is necessary to question [the] jurisdiction of the court over the person at the earliest opportunity, failing in which the defense will be considered waived." *Matter of Adoption of MSVW*, 965 P.2d 1158, 1162 (Wyo. 1998) (citation omitted).

4. We have held that in the termination of parental rights context, we must "keep in mind that the right to associate with one's family is fundamental and strictly scrutinize petitions to terminate a parent's rights to his or her children." *In re JW*, 2010 WY 28, ¶ 24, 226 P.3d 873, 880 (Wyo. 2010). However, there is a "clear distinction between a mere biological relationship and an actual relationship of parental responsibility."

*Lehr v. Robertson*, 463 U.S. 248, 259-60, 103 S.Ct. 2985, 2992, 77 L.Ed.2d 614 (1983). Full due process protections arise, not from the "mere existence of a biological link," *Id.* at 261, 103 S.Ct. at 2993, but due to the familial relationship that "stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in 'promot[ing] a way of life' through the instruction of children as well as from the fact of blood relationship." *Id.* at 261, 103 S.Ct. at 2993 (quoting *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 844, 97 S.Ct. 2094, 2109-10, 53 L.Ed.2d 14 (1977)). Thus, if a parent "grasps [the opportunity to develop a relationship with his child] and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship.... If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie." *Id.* at 262, 103 S.Ct. at 2993-94.