# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 17

**OCTOBER TERM, A.D. 2019**

**February 11, 2020**

IN THE MATTER OF THE ADOPTION OF:
ZEM, a minor child,

JEG and RJG,

Appellants
(Petitioners),

v.                                                            S-19-0104

BCB,

Appellee
(Respondent).

*Appeal from the District Court of Platte County*
*The Honorable Patrick W. Korell, Judge*

*Representing Appellants:*

*James A. Eddington, Jones & Eddington Law Offices, Torrington, Wyoming; Nathaniel S. Hibben, Doby & Hibben, Torrington, Wyoming.*

*Representing Appellee:*

*Hampton M. Young, Jr., Law Office of Hampton M. Young, Jr., P.C., Casper, Wyoming.*

*Before DAVIS, C.J., and FOX, BOOMGARDEN, GRAY, JJ., and RUMPKE, D.J.*

*FOX, J., delivers the opinion of the Court; RUMPKE, D.J., files a specially concurring opinion, in which DAVIS, C.J., joins.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]    Mother and Stepfather appeal the district court's decision denying their petition to adopt the minor child, ZEM, over the objection of her Father.  Finding no abuse of discretion, we affirm.

## *ISSUE*

[¶2]    Mother and Stepfather raise a single issue:  "Did the district court abuse its discretion when it denied the *Petition for Adoption* on best-interests grounds?"[1]

## *FACTS*

[¶3]    Mother and Father dated during 2015 and 2016.  In June 2016, Mother gave birth to their child, ZEM.  Mother has always served as ZEM's primary caretaker.  Father had little contact with ZEM in the first year of her life, by his account, because Mother discouraged his involvement.  After a May 2017 hearing to establish custody, visitation, and support, the district court awarded Father graduated visitation and ordered him to pay monthly child support.

[¶4]    About a year after the order establishing custody, visitation, and support, Mother and Stepfather filed a verified petition for adoption.  They claimed Father failed to financially support ZEM, and they argued that it was in ZEM's best interest to terminate Father's parental rights and allow Stepfather to adopt her.  It was uncontroverted that Father paid no child support for more than a year after the effective date of the child support order.  In fact, Father made his first child support payment five days after Mother and Stepfather filed their petition to adopt.  During the preceding year, Father spent money on beer, gambling, and other interests.  As Father admitted, he relied upon Stepfather to provide for ZEM "so it wasn't as big a pressing of a moral issue" for Father.

[¶5]    Although it was undisputed that Father failed to pay child support, the parties told very different stories regarding Father's relationship with ZEM.  Mother claimed Father was an alcoholic and drug abuser.  She claimed that Father threatened suicide in an attempt to rekindle their relationship, and was mentally abusive toward her during supervised visits.  Mother testified that Father used ZEM as a pawn to try to have a relationship with Mother even though Mother was now married to Stepfather.  Because Father remained interested in Mother, and not ZEM, Mother claimed Father's relationship with ZEM was "nominal, if nonexistent."

---

[1] Father also raises whether "the statutory nonconsensual adoption statutes require a threshold finding of 'willfulness' before proceeding to a 'best interests analysis[?]'"  However, because he did not cross-appeal the district court's decision, we will not consider this issue.

[¶6]    Father described his relationship with ZEM differently.  First, Father pointed out that Mother opposed his unsupervised visits with ZEM.  He also testified that Mother did not keep him informed about things in ZEM's life like doctor's appointments.  Father generally denied Mother's allegations regarding alcohol and drug abuse, as well as her claims that he threatened suicide as a way of trying to keep a relationship with Mother.

[¶7]    The testimony indicated that, after obtaining visitation rights, Father engaged with ZEM.  He read to her, played and sang songs with her, pulled her around on a sled when there was snow, and swam and rode bicycles with her at other times of the year.  Shortly before the final hearing on the adoption petition, Father had ZEM for ten straight days over the Christmas holiday.

[¶8]    The parties also had conflicting reports about how ZEM interacted with Father.  According to Mother, ZEM would cry the entire drive to Douglas where the parties exchanged ZEM for visitation.  Further, Mother claimed ZEM would say that she did not want to go with Father.  However, Father testified that ZEM was always in a good mood during visits.  Contrary to Mother's testimony, Father testified that ZEM did not want to go back with Stepfather after visits with Father.  ZEM's paternal grandmother noted that ZEM had been visiting Father at her house for over a year and that everything seemed to go well throughout the year.

[¶9]    Father took on an active role in parenting when ZEM stayed at "Daddy's house."  Father worked on potty training, making sure that the potty seat went with them at all times.  During the ten-day Christmas visit, Father cared for ZEM when she had a cold.  Although Father conducted his visitation at his Mother's house in Casper, Father personally cared for ZEM during visits, rather than allowing ZEM's grandmother to be her caretaker.

[¶10]   The district court concluded that adoption did not serve ZEM's best interests and denied the petition to adopt, finding:

> [Mother and Stepfather] raise concern[s] about [Father's] behavior at exchanges and his continued inquiry into matters beyond the exchanges or needs of the child.  While the Court notes [Father's] poor conduct, these matters along with the enforcement of child support can be properly addressed in the parties' [child support enforcement] case.  [Mother and Stepfather] also point to the child's behavior and demeanor before and after visitation with [Father].  The Court recognizes that the transition from one household to another is often difficult and stressful on the child and parents, and it is rarely ideal.

2

However, [Father] has been exercising visitation with the child. The child recently spent time with [Father] at Christmas. According to paternal grandmother, [Father] is attentive to the needs of the child and provides caretaking functions during visitation. When [Father] picks the child up . . . , the minor child runs to his arms and gets excited to go to "Daddy's House." [Father] engages in activities such as reading, playing, potty training, sledding, riding bikes, feeding, singing, taking the child to the park, swimming and taking pictures and videos. When the child is visiting, [Father] takes care of the day to day responsibilities of child rearing rather than delegate them to another such as the child's paternal grandmother. If given the choice between asking [Father] or [Father's] Mother for help, the child always asks for [Father's] help. This demonstrates a meaningful bond between [Father] and child. [Father] recognizes she is an extremely smart child. The child knows her paternal uncle and grandmother and asks about them when she is with [Father]. These familial connections and the right of the child to know her biological relatives are important.

If the Court grants the proposed adoption, the right of the child to know her biological father and family would be legally and practically extinguished. In this case, it is in the best interests of the child that her biological father, whom she calls "daddy" remain in her life. A swift and sharp removal of [Father] from the child's life runs a great risk of causing her emotional harm.

Should the Court deny the adoption, the child would have all of the benefits of knowing her biological family and the child would continue [] developing a relationship with [Father] and his family; the child will also maintain the benefit of [Stepfather's] love, affection and support. While [Father] grossly neglected his parental responsibilities through willful nonpayment of child support, such failure does not outweigh the emotional benefit to the child's wellbeing that comes from having her biological father in her life.

Mother and Stepfather timely appealed.

### STANDARD OF REVIEW

[¶11] A district court's decision to grant an adoption without a parent's consent "effectively terminates that parent's parental rights." *In re Adoption of AMP*, 2012 WY

132, ¶ 11, 286 P.3d 746, 749 (Wyo. 2012). The right to associate with one's child is protected by both the Wyoming and United States constitutions, therefore adoption statutes are "strictly construed when the proceeding is against a nonconsenting parent, and every reasonable [inference] is made in favor of that parent's claims." *Id*. The party requesting the adoption must prove the existence of at least one of the statutory factors by clear and convincing evidence. *Id.* This Court defines clear and convincing evidence as the "kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Id*. (quoting *MJH v. AV (In re JRH)*, 2006 WY 89, ¶ 13, 138 P.3d 683, 686-87 (Wyo. 2006)).

[¶12] "If all statutory elements are met, the power to grant or deny a petition for adoption is within the sound discretion of the district court, and we will not disturb the court's decision absent a clear abuse of that discretion." *AMP*, 2012 WY 132, ¶ 9, 286 P.3d at 748. In determining whether the district court abused its discretion, the ultimate question is whether it could reasonably decide as it did. *In re MMM*, 2018 WY 60, ¶ 10, 419 P.3d 490, 493 (Wyo. 2018) (citing *In Interest of SO*, 2016 WY 99, ¶ 11, 382 P.3d 51, 54 (Wyo. 2016)). "In the context of alleged abuse of discretion, the assessment of the circumstances in the case is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court." *In re Adoption of TLC*, 2002 WY 76, ¶ 9, 46 P.3d 863, 868 (Wyo. 2002) (quoting *In re Adoption of SMR*, 982 P.2d 1246, 1248 (Wyo. 1999)). In reviewing the sufficiency of the evidence, "we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party." *MMM*, 2018 WY 60, ¶ 10, 419 P.3d at 493 (quoting *SO*, 2016 WY 99, ¶ 11, 382 P.3d at 54).

## *DISCUSSION*

[¶13] Wyo. Stat. Ann. § 1-22-110 provides the statutory bases for granting an adoption without the consent of a parent. In this case, Mother and Stepfather petitioned for adoption without Father's consent under Wyo. Stat. Ann. § 1-22-110(a)(iv), which allows adoption over the objection of a parent when the parent has failed to pay child support for one year before the filing of a petition for adoption and the parent fails to bring his child support obligation current within sixty days of filing the petition.[2] The district court concluded that Father willfully failed to pay child support, and Father did not appeal that finding.

[¶14] After finding that the adoption could be granted without Father's consent under Wyo. Stat. Ann. § 1-22-110(a)(iv), "the district court was obligated to determine whether the adoption should be granted under Wyo. Stat. Ann. § 1-22-111." *In re Adoption of CF*, 2005 WY 118, ¶ 32, 120 P.3d 992, 1003 (Wyo. 2005). Section 111 allows the district court

---

[2] Mother and Stepfather also alleged that Father failed to pay seventy percent of the court-ordered support for the two years preceding their petition. *See* Wyo. Stat. Ann. § 1-22-110(a)(ix) (LexisNexis 2019). The district court determined that Mother and Stepfather failed to prove that this statutory ground applied to the facts of this case. Neither party appealed that aspect of the district court's order.

to "[d]eny the adoption if the court finds that the best interests and welfare of the child will be served by such denial," even if the petitioners have proven a statutory ground under Wyo. Stat. Ann. § 1-22-110(a). Wyo. Stat. Ann. § 1-22-111(a)(iv) (LexisNexis 2019); *see In re CW*, 2008 WY 50, ¶ 14, 182 P.3d 501, 505 (Wyo. 2008) (trial court is "still not required to order the adoption if it found other valid grounds for denying it" such as the best interests of the children).

[¶15] A court may consider numerous factors when determining whether an adoption is in the child's best interests. 2 Am. Jur. 2d *Adoption: Welfare and 'best interests' of child; generally* § 131 (January 2020 Update) ("a judge may consider a wide range of permissible evidence in determining which placement will serve the child's best interests, and it is for the trial judge to determine the weight of the evidence"). Moreover, "[t]he trial judge is in the best position to determine questions of credibility and to weigh and judge the evidence." *CF*, 2005 WY 118, ¶ 35, 120 P.3d at 1004. "No single factor is determinative" and "[d]epending on the case, different factors will present a greater need for emphasis. . . . The one constant . . . is that the resolution must be in the best interests of the children in that particular family." *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 10, 167 P.3d 639, 642 (Wyo. 2007) (applying best interest standard in a custody modification case after divorce).

[¶16] Mother and Stepfather argue the district court's conclusion that Father willfully failed to pay child support "must inform the 'best interests' analysis in this case" and assert that the district court's failure to "analyze 'best interests' in light of its earlier 'willfulness' finding . . . constitutes an abuse of discretion." We disagree. The district court specifically considered the willfulness of Father's failure to financially support ZEM when it concluded that "[w]hile [Father] grossly neglected his parental responsibilities through willful nonpayment of child support, such failure does not outweigh the emotional benefit to the child's wellbeing that comes from having her biological father in her life." Despite that evidence, it concluded other factors such as ZEM's bond with Father; her right to know her biological relatives; the risk of emotional harm she would suffer if deprived of her relationship with Father; and that Stepfather would remain a part of her life even without adoption, outweighed these concerns under the circumstances. The district court's order demonstrates that it carefully weighed conflicting evidence, determined credibility, and came to a reasonable conclusion. Thus, we hold the district court did not abuse its discretion in denying the adoption.

[¶17] Affirmed.

5

**RUMPKE, District Judge,** specially concurring, in which **DAVIS, Chief Justice,** joins.

[¶18] I agree with the majority's conclusion that the district court did not abuse its discretion in denying Mother and Stepfather's petition to adopt ZEM over Father's objections. I write separately to address the burden of proof that applies in determining whether termination of parental rights is in a child's best interest.

[¶19] The district court correctly identified the burden of proof for determining whether a statutory ground for adoption had been proven, namely "clear and convincing evidence." However, neither this Court nor the district court identified what quantum of proof (i.e. preponderance, clear and convincing, beyond a reasonable doubt, etc.) that Mother needed to produce to establish that adoption was in ZEM's best interest. Without deciding what level of proof the petitioner in a contested adoption must produce, neither attorneys nor trial courts are certain what we affirm here today. More importantly, potential petitioners do not know what quantum of proof they must produce to prove that adoption over a parent's objection is in the child's best interest.

[¶20] Adoption proceedings are also termination proceedings. *Matter of the Adoption of BGH*, 930 P.2d 371, 375 (Wyo. 1996) ("the legislature has provided for the termination of parental rights through the adoption procedure"). In adoptions, as in termination proceedings, the proponent of termination must prove a statutory basis by clear and convincing evidence. *See In re Adoption of TLC*, 2002 WY 76, ¶ 9, 46 P.3d 863, 868 (Wyo. 2002); Wyo. Stat. Ann. § 14-2-309(a). In an adoption, the trial court must determine whether adoption is in the child's best interest. Wyo. Stat. Ann. § 1-22-111(a)(iv). Judicial decisions require the trial court to determine if termination is in the child's best interest after proof of a statutory basis in termination proceedings. *See Matter of DKS*, 2020 WY 12, ¶ 10, --- P.3d ---, --- (Wyo. 2020). Neither the adoption statutes nor case law define what amount of proof is necessary to find that termination is in the child's best interest.

[¶21] "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Santosky v. Kramer*, 455 U.S. 745, 754–55, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982) (citations and internal quotation marks omitted). In *Santosky*, the United States Supreme Court explained the difference between a "factfinding" hearing (i.e., a determination of whether a state-law basis for termination has been proven) and a "dispositional" hearing (i.e., when the court determines what is in a child's best interest). "At the factfinding, the State cannot presume that a child and his parents are adversaries. After the State has established parental unfitness[3] at that initial

---

[3] Wyoming's adoption statutes do not require a showing of "unfitness" as defined by this Court in termination cases. Only two grounds for termination include proving unfitness. *See* Wyo. Stat. Ann. § 14-2-309(a)(iv) and (v). The New York statutes at issue in *Santosky* did not require proof that a parent was unfit. In this context, "unfitness" means a showing that a statutory criteria for termination has been proven.

proceeding, the court may assume at the *dispositional* stage that the interests of the child and the natural parents do diverge." *Id.* at 760–61, 1398.

[¶22] Relying on *Santosky's* distinction between proving a statutory ground for termination and evaluating the child's best interests, courts have varied on what burden of proof to apply when making a best interest determination. Before a court determines if there is a ground to terminate parental rights, "[t]wo private interests are at stake . . . : the parent's fundamental liberty interest in the care, custody and management of his or her child, and the child's interest in a normal family home" or "interest in a loving, stable and safe home environment[.]" *In re D.T.*, 818 N.E.2d 1214, 1226 (Ill. 2004) (citations and internal quotation marks omitted). Therefore, "the interests of the parent and the child coincide to the extent that they both 'share a vital interest in preventing erroneous termination of their natural relationship.'" *Id.* (quoting *Santosky*, 455 U.S. at 760, 102 S.Ct. at 1398). However, the parent's and child's interests diverge once the trial court finds a statutory basis for terminating parental rights:

> Thus, at a best-interests hearing, the parent and the child may become adversaries, as the child's interest in a loving, stable and safe home environment become more aligned with the State's interest in terminating parental rights and freeing the child for adoption. Although the parent still possesses an interest in maintaining the parent-child relationship, the force of that interest is lessened by the court's finding that the parent is unfit to raise his or her child.

*D.T.*, 818 N.E.2d at 1226; *accord In re Medina*, 894 N.W.2d 653, 663 (Mich. Ct. App. 2016); *Matter of Adoption of R.M.*, 785 P.2d 709, 713 (Mont. 1990); 2 Ann M. Haralambie, *Handling Child Custody, Abuse and Adoption Cases* § 13:3 (2018) ("[b]ecause termination of parental rights is such a final deprivation of a fundamental right, courts and legislatures require proof by more than a preponderance of the evidence with respect to the substantive grounds. In most cases, the standard required is clear and convincing evidence. The additional finding that termination is in the best interests of the child, may generally be made by meeting a lower standard of proof").

[¶23] The Legislature established statutory circumstances whereby a parent's rights may be terminated through adoption. *BGH*, 930 P.2d at 375. These criteria express the will of the Legislature that if certain criteria are established by clear and convincing evidence, a child's fundamental right to a stable and loving home is elevated over a parent's desire to raise that child. Once a petitioner proves the statutory grounds for termination through adoption, the interests of the child and parent may diverge, and the adoption petitioner should only have to prove by a preponderance of the evidence that adoption is in the child's best interest. *See In re Adoption of CF*, 2005 WY 118, ¶ 35, 120 P.3d 992, 1004 (Wyo.

2005) (affirming adoption over mother's objection because district court found foster parents' expert's opinions "more persuasive" than mother's expert's opinions).

[¶24]  This is consistent with the Due Process clause of the Fourteenth Amendment and Article 1, § 6 of the Wyoming Constitution.  The grounds for termination, whether via adoption or through a termination proceeding, are substantial hurdles.[4]  For example, in this case, Father did not miss a few child support payments.  He provided no financial support for ZEM for over one year.  Once Mother proved by clear and convincing evidence that Father failed to financially support ZEM for a year, determining ZEM's best interest became the paramount concern and should only be subject to a preponderance of the evidence standard.  That is, is it more likely than not that ZEM's best interest are served by terminating her relationship with her Father?

[¶25]  In its well-reasoned analysis quoted by the majority above, the district court concluded that Father's relationship with his child weighed against severing the biological tie between parent and child.  The district court reasonably concluded that ZEM would be better off with a continued relationship with her paternal family.  Given the district court's credibility determinations, there is sufficient evidence to support the district court's conclusion that granting the adoption was not in the child's best interest whether holding Mother to a preponderance, or clear and convincing, evidentiary standard.  Therefore, I would affirm the district court's judgment, but define the proper quantum of proof applicable to the trial court's best interest analysis in adoption proceedings.

---

[4] *Santosky* is a 5-4 decision wherein four justices dissented on the basis that the state's statutory process provided an "exhaustive program" to avoid unfair deprivation of parental rights even without a heightened burden of proof.  *Santosky*, 455 U.S. at 770–71, 102 S.Ct. at 1404 (Rehnquist, J., dissenting).