*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-21-0000285
27-DEC-2022
09:06 AM
Dkt. 14 OPA

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN THE INTEREST OF ASK

SCWC-21-0000285

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000285; FC-S NO. 18-00112, FC-S NO. 18-00241,
FC-A NO. 20-1-6137, FC-A NO. 21-1-6005)

DECEMBER 27, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY EDDINS, J.

**I.**

The family court has to consider sixteen factors to guide its best interests of the child finding in parental custody and visitation cases. See Hawai'i Revised Statutes (HRS) § 571-46(b) (2018). But there are no statutory factors to guide a family court's "best interests of the individual" finding in adoption

and permanent placement cases.  See HRS § 578-8 (2018 & Supp. 2019).

So what's a family court to do when faced with competing petitions for adoption of three young siblings?

In petitions for adoption and permanent placement, we hold that a family court is free to consider any admissible evidence that addresses its dispositive fact of consequence, the best interests of the individual.  This may include evidence supporting some best interests factors listed in HRS § 571-46(b).  And it may include much more.  Only the rules of evidence confine the family court as it finds, weighs, and values facts to reach its best interests determination.

Because the Family Court of the First Circuit properly assessed the relevant evidence to support its best interests of the individual determination, we affirm its orders.

## II.

In 2018, the Department of Human Services (DHS) received reports of parental neglect involving two siblings, three-year old and seven-month old sisters.  DHS assumed temporary foster custody of the Children under the Child Protective Act (CPA).  It placed the Children with a DHS-vetted family, the Resource Caregivers (RCGs).  Months later a brother was born; DHS took custody and placed the newborn with his sisters in RCGs' home.

The Children's mother died in 2019 while CPA proceedings were ongoing. DHS then moved to terminate Father's parental rights. Father stipulated to the termination of his parental rights in July 2020.

Once parental rights terminate, DHS assumes legal custody and must find the child a suitable permanent home. In re Doe, 100 Hawaiʻi 335, 346 n.19, 60 P.3d 285, 296 n.19 (2002). DHS also has to consent to the proposed adoption of a child in its custody under HRS § 578-2(6) (2018), though its placement decision is subject to the family court's independent best interests determination. See In re AS, 132 Hawaiʻi 368, 378, 322 P.3d 263, 273 (2014).

In 2020, the Children's paternal Aunt and Uncle (Relatives) from California successfully moved to intervene in the CPA's permanent placement and adoption proceedings.

DHS filed a petition on RCGs' behalf to adopt the Children. DHS recommended permanent placement with RCGs in October 2020. In January 2021, Relatives filed their own petition to adopt the Children. DHS opposed the petition and filed a Notice of the Department of Human Services' Withholding of Consent to [Relatives'] Adoption Petition.

The family court consolidated the dual adoption cases. It held a four-day trial on the Children's adoption and permanent

placement.[1]  When trial started, the sisters had lived with RCGs for about two years and seven months, and their younger brother had lived with RCGs for two years and two months.

The family court found that adoption by the RCGs was in each child's best interests and confirmed DHS's placement decision.  The court checklisted HRS § 571-46(b).  It marched through all sixteen factors, recognized most did not apply, and considered other factors including finances and kinship.  It decided on balance that the pertinent evidence favored RCGs.

The court granted DHS's petition for adoption by Resource Caregivers.  And it denied the petition for adoption by the Children's paternal Aunt and Uncle.

Relatives appealed.  They challenge the court's use of HRS § 571-46(b)'s factors, and claim the family court failed to adequately consider best interests factors in their favor, like "blood" and money.  They also say the court applied an incorrect legal standard and failed to independently review DHS's placement recommendation.

The Intermediate Court of Appeals affirmed the family court's orders.  Now Relatives repeat their arguments and urge "this court [to] clarify what factors are to be applied by the

---

[1]    The Honorable John C. Bryant, Jr. presided.

4

trial courts to determine best interests in permanent placement proceedings and adoption proceedings."

## III.

Contrary to Relatives' assertions, a family court does not necessarily err when it relies on HRS § 571-46(b)'s mandatory custody and visitation factors to guide a best interests determination in adoption and permanent placement proceedings. But Relatives make a cogent point that the factors are mostly ill-suited to an adoption and permanent placement case.

Because most of the custody and visitation factors focus on parents – their history, characteristics, and quality of relationship with their child – once parental rights terminate, those factors recede. HRS § 571-46 is titled "Criteria and procedure in awarding *custody and visitation*." (Emphasis added.) HRS § 571-46(b) lists the factors[2] that family courts

---

[2] Under HRS § 571-46(b):

> In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:
>
> > (1) Any history of sexual or physical abuse of a child by a <u>parent</u>;
> >
> > (2) Any history of neglect or emotional abuse of a child by a <u>parent</u>;
> >
> > (3) The overall quality of the <u>parent</u>-child relationship;
> >
> > (4) The history of caregiving or <u>parenting</u> by each <u>parent</u> prior and subsequent to a marital or other type of separation;

5

"shall consider" to determine whether a *parent* is awarded custody or visitation of a child.  Only five of the sixteen factors directly link to "the needs of the child."  See HRS §§ 571-46(b)(6) - (10).  So in post-parental termination cases, there is no reason to require family courts to do what the court did here - evaluate each custody and visitation factor.  See In

---

(5) Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(6) The physical health needs of the child;

(7) The emotional needs of the child;

(8) The safety needs of the child;

(9) The educational needs of the child;

(10) The child's need for relationships with siblings;

(11) Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; . . .

(12) Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

(13) Any evidence of past or current drug or alcohol abuse by a parent;

(14) The mental health of each parent;

(15) The areas and levels of conflict present within the family; and

(16) A parent's prior wilful [sic] misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. . . .

(Emphases added.)

6

the Interest of Hannah L., 390 P.3d 1153, 1159 (Alaska 2017) (rejecting petitioner's argument that family courts must base adoption best interests determinations on the factors required in child custody cases).

Further distancing the parental custody factors from adoption and permanent placement, HRS § 578-8 concerns the adoption of an *individual.* It requires that an "adoption will be for the best interests of the individual."[3] Individuals come in all ages. And have varied needs. So HRS § 571-46(b)'s best interests of a child factors do not neatly migrate to HRS § 578-8's best interests of an individual determination.

Relatives believe the family court's reliance on HRS § 571-46(b) meant the court placed "unreasonable weight" on the Children's attachment to RCGs, while undervaluing other factors. They argue that the mandatory parental custody factors should

---

[3]     HRS § 578-8(a) reads:

> After considering the petition and any evidence as the petitioners and any other properly interested person may wish to present, the court may enter a decree of adoption if it is satisfied that:
>
>> (1)  The individual is adoptable under sections 578-1 and 578-2;
>>
>> (2)  The individual is physically, mentally, and otherwise suitable for adoption by the petitioners;
>>
>> (3)  The petitioners are fit and proper persons and financially able to give the individual a proper home and education, if the individual is a child; and
>>
>> (4)  The adoption will be for the best interests of the individual.

7

not be given presumptive weight in adoption and permanent placement proceedings.

True, there is no statutory provision that gives some evidence superior probative value over other evidence in adoption and permanent placement cases. But here the family court did not automatically boost the value of attachment evidence, or any evidence. The court merely attached probative value to that evidence. It did not treat attachment as a statutory super-factor or give that evidence preferential treatment. Rather, it weighed the attachment evidence alongside the other evidence and found it valuable.

Under the circumstances of the case, the family court viewed the attachment evidence as compelling. The court believed that removing the Children from RCGs' home would not serve their best interests. It explained that the Children identify RCGs as their parents, and the RCGs' home as their home. The court stressed the importance of stability in the Children's lives. It also valued the oldest child's distinct needs as the only sibling who remembered being neglected and abused.[4]

Relatives' claim that the family court disregarded relevant evidence is misplaced. They argue that the court focused only

---

[4]    The court found the child's removal from RCGs' home, "even with prophylactic measures, is not a justifiable risk to [her] emotional health."

8

on the HRS § 571-46(b) factors.  Thus, it ignored, or at least undervalued, evidence about their financial status and blood relationship to the Children.  The court, however, factored the finances of both prospective adoptive families.  It also considered evidence of Relatives' kinship to the Children.  This evidence, though, did not alter the court's best interests determination.

## IV.

Since HRS § 578-8 has no best interests factors and HRS § 571-46(b)'s best interests factors do not entirely align with the court's key inquiry, how does a family court become "satisfied . . . [t]he adoption will be for the best interests of the individual"?

It values the evidence.  Like in any trial.

In petitions for adoption and permanent placement, a family court should consider all admissible evidence to determine the best interests of the individual.  This may include evidence supporting a pertinent best interests factor listed in HRS § 571-46(b).  And it may include other relevant evidence.[5]  Only the rules of evidence confine the family court.

---

[5]    We stress that HRS § 571-46(b)'s factors may be relevant in adoption and permanent placement cases.  For instance, courts must consider admissible evidence about a prospective adoptive parent's: "history of sexual or physical abuse of a child," HRS § 571-46(b)(1); "history of neglect or emotional abuse of a child," HRS § 571-46(b)(2); "past or current drug or alcohol abuse," HRS § 571-46(b)(13); and "mental health," HRS § 571-46(b)(14).

9

We also hold that within this typical trial framework, there are no statutory presumptions, no "super-factors," and no evidence that deserves automatic preferential treatment.

Our view reflects a central feature of any trial: the fact-finder – judge or jury - finds facts, weighs and values those facts, and finds other facts, the facts of consequence. The dispositive fact of consequence in adoption and permanent placement trials is what outcome serves the individual's best interests. Our approach squares with HRS § 578-8, which instructs family courts to consider "*any evidence* as the petitioners and any other properly interested person may wish to present." (Emphasis added.) This law's panoramic outlook suits the family court's broad discretion in best interests determinations. It allows the court to find and weigh any fact - under case-specific circumstances - that is helpful to its best interests determination. See, e.g., Matter of Adoption of ZEM, 458 P.3d 21, 25 (Wyo. 2020) ("A court may consider numerous factors when determining whether an adoption is in the child's best interests. . . . No single factor is determinative and depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the best interests of the children in that particular family." (cleaned up)); 2 Am. Jur. 2d Adoption § 131 (Nov. 2022 Update) ("[A] judge may consider a wide range of permissible

10

evidence in determining which placement will serve the child's best interests, and it is for the trial judge to determine the weight of the evidence.").

**V.**

We turn to whether the family court independently reviewed DHS's placement recommendation and properly found that the Children's adoption by RCGs was in their best interests.

Relatives maintain that the court rubber-stamped DHS's permanent placement recommendation. They say the court did not make an independent determination of the Children's best interests. See In re AS, 132 Hawaiʻi at 378, 322 P.3d at 273 (holding DHS's placement decisions remain subject to the family court's "independent best interests review"). The record belies Relatives' claim.

The court did not uncritically accept DHS's placement decision. Rather, the family court meaningfully assessed the admissible evidence to determine which adoption served the Children's best interests. In a 46-page order, the court made over 200 findings of fact and 43 conclusions of law. There was no rubber-stamp.

The family court's review contrasts with the court's actions in In re AB, 145 Hawaiʻi 498, 517–18, 454 P.3d 439, 458–59 (2019). There the court did not independently determine that DHS's out-of-state permanent placement decision served a child's

11

best interests.  The court "simply said, 'All right' and moved on" without considering alternatives to out-of-state placement or the decision's impacts on the child's relationships and stability in Hawai'i.  Id.

Here, we conclude that the family court properly considered the admissible evidence and found that adoption and permanent placement with RCGs served the Children's best interests.  The court did not abuse its discretion.  See Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (holding that "the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion").

## VI.

We affirm the ICA's Judgment on Appeal and the Family Court of the First Circuit's April 6, 2021 Order affirming DHS's permanent placement of the Children with RCGs and denying Relatives' adoption petition.

| | |
|---|---|
| Francis T. O'Brien<br>(Brett A. Ritter on the briefs)<br>for petitioner | /s/ Mark E. Recktenwald<br>/s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| Patrick A. Pascual and<br>Julio C. Herrera<br>(Ian T. Tsuda and Regina Anne<br>Mormad Shimada on the briefs)<br>for respondent | /s/ Michael D. Wilson<br>/s/ Todd W. Eddins |

